## COOK *v.* DARLING.

1. Sales—Contracts—Implied Warranty of Fitness—Food.
    Articles bought by a dealer and sold for consumption are impliedly warranted to be fit for the intended purpose.[1]

2. Same—Express Provisions of Contract—Interpretation.
    A provision expressed in the contract of sale that, if goods prove unsatisfactory, after the purchaser uses half thereof they may be returned with the name of the purchaser and cause of complaint and the price would be refunded, is not a limitation of redress to cases only in which half of the goods were used.

---

[1]As to implied warranty of fitness upon sale of food, see notes to *McQuaid* v. *Ross* (Wis.), 22 L. R. A. 195, and *Farrell* v. *Manhattan Market Co.* (Mass.), 15 L. R. A. (N. S.) 884.

3. SAME—BUYER'S REMEDIES—BREACH OF WARRANTY.

A breach of the warranty of fitness may be urged in defense of an action for the purchase price brought on an accepted draft having a condition that the plaintiff perform his contract, without defendant's offering to return the goods; since the omission to return affects only the amount of damages, unless the contract by its terms requires such return.

4. SAME—RETURN OF PROPERTY—CONSTRUCTION OF CONTRACT.

Under the provisions of a contract stipulating that the goods sold thereunder might be returned after half of any kind purchased should be consumed, if found unsatisfactory, worthless and unwholesome goods are construed not to be necessarily included, and their return not a condition precedent to recoupment for breach of warranty.

5. SAME—QUESTIONS OF LAW AND FACT.

The question of plaintiff's due performance of its contract should have been submitted to the jury where evidence was introduced tending to show that unfit goods were furnished thereunder.

6. SAME—REASONABLE TIME — COMPLAINT OF BUYER — QUESTIONS FOR JURY—DIRECTING VERDICT.

Where the nature of the purchaser's business required some months to set it in operation, the question of reasonableness of the defendant's delay for several months in making complaint should be submitted to the jury.

Error to Lenawee; O'Mealey, J. Submitted February 18, 1910. (Docket No. 90.) Decided March 19, 1910.

Assumpsit by Cliff R. Cook against Elbert W. Darling for goods sold and delivered. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*Smith, Baldwin & Alexander*, for appellant.

*Charles L. Robertson*, for appellee.

The seller's plan was as follows:

"When goods have been bought out of the dealer's stock sufficient to call for any of the merchandise listed in the catalogue or double value in goods, the same will be

furnished by us free of charge, f. o. b., distributing point on order from the dealer accompanied by reorder for goods at the wholesale price amounting to 75 per cent. of the retail price of the goods sold. The 75 per cent. sent for reorder pays for at actual factory cost the double values shipped. The reorder replaces for the dealer the goods sold, and at the same time secures for him the extra or double value furnished his customer without one cent cost, and with full profits on this and all sales. This is the point at which we give up our profits for the furnishing of the double value and the strongest possible expression of our real purpose to do our full share in the cooperation.

"It devolves upon us to furnish the manufactured goods which we have already arranged to do; also to furnish the merchandise for double values, and catalogues properly illustrating and listing this merchandise. The catalogues of merchandise will afford satisfaction and sales when placed alongside of the offers made by the mail order firms.   *   *   *

"The club organizer or secretary will be furnished one dollar either in goods or in premiums for each club member secured who pays ten dollars. For a club of five the club organizer will receive five dollars in goods or a five dollar premium.

"The premium to the club organizer is furnished by us as advertising expense for promoting the club plan, and without any expense on the part of the dealer. Special club agreement blanks are furnished by us.

"If goods should be sold for the dealer by a solicitor and a commission of 40 per cent. on the sales should be preferred in place of double values in premium of goods, the same will be allowed. So far as cost to us is concerned, we can afford to do this, but advise that the double values offered are of greater value and a better advertisement for the dealer.

"Pass books, premium catalogues, order blanks, etc., will be furnished the dealer without charge."

STONE, J. This is an action of assumpsit, brought by Cliff R. Cook, doing business as the Colonial Manufacturing Company. It was commenced in justice's court on June 18, 1908. The declaration was oral on all the common counts, and especially on a signed acceptance. The

plea was the general issue with notice of fraud and breach
of warranty. The draft sued upon was dated October 22,
1907, for $65, and was one of a series of four drafts made
in payment for a bill of goods purchased by defendant
from the plaintiff under a contract hereinafter refer-
red to. Judgment was rendered for the defendant in
justice's court, and the plaintiff appealed to the circuit
court, where upon a trial by jury the circuit judge di-
rected a verdict for the plaintiff. The defendant assigned
error upon the charge, and the case is here upon writ of
error.

The goods were sold upon what the plaintiff terms "a
premium or double value plan." The defendant signed
the several acceptances, but added the words, "Provided
said company does according to contract." The defend-
ant was a retail grocer doing business in the city of
Adrian. The goods ordered by him from the plaintiff
consisted of a quantity of soaps, toilet goods, perfumes,
flavoring extracts, coffee, tea, allspice, cinnamon, ginger,
mustard, nutmegs, cloves, pepper, baking powder, saler-
atus or soda, celery salt, etc., and were intended by both
parties to be sold to the customers of the defendant in the
course of his trade in the city and vicinity. The written
contract contained the following:

"Goods Guarantees.—All our goods are manufactured
in compliance with the requirements of The Food and
Drugs Act, June 30, 1906, and are produced with skill
and great care for the building up and holding of trade.
If any article purchased in this order proves unsatisfactory
as to quality after using one-half of it, return with name
of consumer and cause of complaint, and we will refund
price paid. And it is further arranged that if the dealer
should have more of any article than his trade demands,
or for any reason desires to make an exchange for other
goods, such goods will be received at the full purchase
price at any time within one year in payment of any new
order to the extent of one-half of such order, but no goods
are to be returned as payment on this first order."

Upon the trial of the case the plaintiff offered the testi-

mony of one Beck, an employé, tending to show that the plaintiff had performed the contract on his part. It was the claim of the defendant that the goods furnished by plaintiff were not pure and wholesome, and were not as represented by the plaintiff; that he in good faith put out to his customers the goods furnished by plaintiff, relying upon the warranties and agreements as to the kind and quality, and believing such representations to be true he put out these goods to customers under the same guaranties; that said goods were not "produced with skill and great care for the building up and holding of trade;" that they were inferior in quality; and that he had lost trade and customers by reason of the premises, and had suffered damages thereby. The defendant offered evidence tending to support his claim. Ten witnesses were examined on the part of the defendant. Their testimony tended to show that defendant received many complaints from his customers as to the quality of the goods, and that especially the tea, coffee, baking powder, soda, and soap were of an inferior quality, and, in fact, worthless.

The amount of the original order was $260. The acceptances were in equal sums of $65 each, and were payable in four, six, eight, and ten months from date. The defendant paid the draft first due. He claims that it took him some months to get the scheme or plan in operation, and it does not appear that he made any positive complaint to the plaintiff until April 15, 1908, when he wrote and mailed the following letter to the plaintiff:

"ADRIAN, MICH., April 15, 1908.
"COLONIAL MFG. CO.,
            "Detroit, Michigan.
"*Dear Sirs:* My experience in handling your goods is to the effect that they are not as recommended to me. Have been to quite an expense in advertising and have got quite a large number of people to try the goods. Have about 50 pass books started but the business is práctically dead. I have advertised of late but it has no effect. When I ask the people about it they say the goods is not what they are represented to be, that they are not worth

the money even at the double value proposition. In your guarantee you say the goods are produced with great care for the building up and holding up the trade which you can plainly see does not work in my case. The premium No. 75 roller skates you sent me one of the rollers split in two the first time used. Please advise me what to do as I do not wish to put any more money in them under present circumstances.

"Yours very truly,
"E. W. DARLING, Adrian, Mich."

On April 16, 1908, plaintiff answered this letter, expressing great surprise at the dissatisfaction of defendant, praising the goods and plan of the plaintiff, claiming that plaintiff was not responsible for the inferior quality of the skates, etc. Upon presentation of the draft sued upon on April 28th, the defendant wrote the following letter to the plaintiff:

"ADRIAN, MICH., April 28, 1908.
"COLONIAL MFG. CO.,
        "Detroit, Mich.
    "Sirs: Your draft was presented to me this morning but as I have told you that the goods were not as represented by you that I did not care to put any more money into them did not honor it but will say I will send you a check for second payment and also send back the goods that have been condemned and the people's names who have tried them and you return the price paid as per contract. Will send you check in a few days.
"Very truly,
"E. W. DARLING."

The next letter in the record was written to the defendant by the plaintiff on May 7, 1908. After commending his goods and claiming that the plaintiff is without fault, he closes the letter in this language:

"I presume that the several customers that you refer to who have expressed dissatisfaction with our goods will be willing to make an affidavit to that effect, and, if you will return the article to us with the name of the customer and the cause of the complaint together with the one-half of the contents of the package, we will refund the price paid if the cause of complaint is just, and we are in any

way responsible. We try to build up our business on the merits of the goods, and it is very disappointing to us to hear that any one should be in the least dissatisfied. We want to guarantee satisfaction, and we will co-operate with you in every way to convince your customers that the goods in our line are right."

It is the claim of the defendant that these goods were sold with the express warranty that they were manufactured in compliance with the requirements of the food and drugs act of Congress (Act June 30, 1906, chap. 3915, 34 U. S. Stat. p. 768 [U. S. Comp. Stat. Supp. 1909, p. 1187]), and that they were produced with skill and care for the building up and holding of trade, and that there was a breach of this contract on the part of the plaintiff. Whether there was here an express warranty or not, the fact appears that many of the goods were articles of food, and all were intended for family consumption. It seems to be a well-settled doctrine in this State that where property is bought for a particular purpose, and only because of its supposed fitness for that, and where articles are bought for consumption, and the vendor sells them for that express purpose, the consequences of unsoundness are so dangerous to health and life and the failure of consideration is so complete that, where there is not an express warranty, there is an implied warranty that the goods are fit for the purpose for which they were bought, and that articles of food are fit for consumption. In such cases the vendor is held to a strict accountability. *Hoover* v. *Peters*, 18 Mich. 51; *Sinclair* v. *Hathaway*, 57 Mich. 60 (23 N. W. 459, 58 Am. Rep. 327); *Copas* v. *Provision Co.*, 73 Mich. 541 (41 N. W. 690); *Blodget* v. *Detroit Safe Co.*, 76 Mich. 538 (43 N. W. 451); *McCray Refrigerator & Cold Storage Co.* v. *Woods & Zent*, 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599); *Little* v. *G. E. Van Syckle & Co.*, 115 Mich. 480 (73 N. W. 554); *West Michigan Furniture Co.* v. *Diamond Glue Co.*, 127 Mich. 651 (87 N. W. 92).

The circuit judge charged the jury as follows:

160 MICH.—31.

"The contract further provides:

"'If any article purchased in this order proves unsatisfactory as to quality, after using one-half of it, return with name of consumer and cause of complaint, and we will refund price.'

"I think, gentlemen, that in this provision of the contract the parties fixed and determined the remedy which would be available to the defendant in the event that any of the goods mentioned in this order were found to be defective by the customers to whom the defendant might sell them, as to quality."

We think that this was too narrow a construction to place upon this contract. It was to instruct the jury that the defendant could not have any redress for the sale of goods unsatisfactory as to quality unless *one-half* of them was used, and to make use of *one-half* of each article a condition precedent to any relief to defendant for inferior and unfit goods, notwithstanding the qualified acceptance sued upon, that, in order to recover, the plaintiff must show affirmatively that he had performed his contract.

There is force in the position of the defendant that in and by his letter of May 7, 1908, above quoted, the plaintiff had himself departed from the original terms of the contract by requiring an affidavit from the customer, and making the refund depend upon whether he considered the complaint a just one—terms that were not in the original contract. In our opinion the doctrine of the case of *Hull* v. *Belknap*, 37 Mich. 179, applies here, that breach of warranty may be set up as a defense without returning the goods, unless the contract of sale expressly requires their return; that the omission to return them only affects the amount of damages.

We think it unreasonable to hold that the language of the contract quoted by the circuit judge was intended to cover all cases of unwholesome and worthless goods, and that the customer should in all cases be required to use one-half the goods, whatever the result to health or comfort might be. Therefore it cannot be said that the contract expressly required the return of the goods in all cases.

We think that the circuit judge also erred in refusing to submit to the jury the question of whether the plaintiff had performed his contract, and had furnished goods fit and suitable for the use intended by the parties. Whether the defendant had made complaint within a reasonable time under the circumstances as shown by the evidence was also a question of fact in this case for the jury. It would naturally take some months for the defendant to put the proposed scheme into effect and operation before he could reasonably make complaint. All of these questions were taken from the jury by the direction of a verdict for the plaintiff.

For the errors pointed out, the judgment below is reversed, and a new trial granted, with costs of this court to the defendant.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.