STEERING WHEEL CO. *v.* FEE ELECTRIC CAR CO.

1. SALES—WARRANTY—SALE BY SAMPLE—MANUFACTURER—CON-
   TRACTS—FITNESS FOR USE.

   The warranty, implied in case of sales by sample, is that
   the bulk of the goods is fairly equal to the sample in nature,
   kind, and quality; but where a manufacturer sells goods by
   sample for a special purpose, there is an implied warranty
   that the bulk and the sample shall be reasonably fit for the
   contemplated use.[1]

2. SAME.

   In the sale of non-skid automobile chains by a sample exhibited
   to defendant, the manufacturer and seller, by implication,
   warranted that the chains were fit for the purpose that they
   were intended to serve.

3. SAME—COMPROMISE AND SETTLEMENT.

   It was for the jury to determine whether, as claimed by defend-
   ant, disputed by plaintiff, the parties, after making a contract
   of sale, later entered into an arrangement at variance with
   the first agreement, whereby the buyer, which had rejected
   and returned the goods, agreed to take them back and sell
   them for plaintiff.

Error to Wayne; Mandell, J. Submitted June 21,
1912. (Docket No. 147.) Decided April 8, 1913.

Assumpsit by the Steering Wheel Company against the
Fee Electric Car Company for the price of goods sold and
delivered. Judgment for plaintiff on a directed verdict.
Defendant brings error. Reversed.

[1] The authorities on the question of warranty on sale of goods by
sample are discussed in a note in 70 L. R. A. 653. And as to
whether sale by sample excludes implied warranty other than that
goods shall conform to sample, see note in 29 L. R. A. (N. S.) 139.

And on the implied warranty of the fitness of a particular article
purchased from a manufacturer or producer for a particular use,
see notes in 22 L. R. A. 187; 15 L. R. A. (N. S.) 855; 31 L. R. A. (N.
S.) 783; and 34 L. R. A. (N. S.) 737.

*Barnes & Stowers*, for appellant.

*Louis C. Wurzer* and *Harry B. Keidan*, for appellee.

McALVAY, J. The plaintiff, a foreign corporation, brought suit in justice's court in the city of Detroit and recovered a judgment against defendant, a Michigan corporation. Defendant appealed to the circuit court, where the result of the trial was an instructed verdict by the court for plaintiff, upon which verdict a judgment was entered.

The facts of the case are as follows:

Plaintiff, in the year 1908, sold defendant certain non-skid chains for use upon automobiles, for which defendant gave an order, as follows:

FEE-VINCENT ELECTRIC CAR CO.<br>344-346 Jefferson Ave.

Mail invoice to this office.

DETROIT, MICH., May 25, 1908.

D. W. HENRY:

Please enter our order for the following, and deliver to freight

FEE-VINCENT ELECTRIC CAR CO.<br>Per K. A. C.

No. 576.
This Number MUST APPEAR
on Invoice
50 set chain 34-2½.
Grips as per
Sample Showed
6.50 per sett.
f. o. b. factory.

FEE ELECTRIC CAR CO.,<br>By ROBT. L. FEE.

H-6
No allowance for Cartage or Packing.

This order was received June 27, 1908, and accepted in the following form:

THE STEERING WHEEL COMPANY,
Sidney, Ohio.

Order mailed.    Order received.
6-27-08.

Customer, Fee Electric Co.
Ship to 344 Jefferson Ave., Detroit, Mich.
Your order No. 576.
Via freight.
Can ship about

| Quantity. | Description. |
|---|---|
| 50 | Set 2½″ Henry Non-Skid Chains. |

COPY.

If any correspondence is necessary regarding this order, kindly refer to our No. H-6.

IMPORTANT.—This is an exact copy of your order as entered and will be so filled and shipped. If any errors, please notify us immediately.

THE STEERING WHEEL COMPANY,
Sidney, Ohio.

The goods were shipped to defendant July 10, 1908, and were received in due time. Afterwards plaintiff asked for payment of these chains by letter, as follows:

THE STEERING WHEEL COMPANY.
SIDNEY, OHIO, Sept. 15th, '08.

FEE ELECTRIC CAR CO.,
Detroit, Mich.

*Dear Sirs:*

As per inclosed statement, we beg to call your attention to your account with us, represented by invoice of July 9th, and amounting to $325.00, which is now past due.

In accordance with our usual custom, we would make draft on you for the amount on this date, however, not being familiar with your manner of settlement, we hesitate to take this action and trust you will favor us with remittance by return mail. In absence of settlement by the 22d instant, however, we will understand that it is agreeable to you for us to make draft and thanking you for your attention, we remain,

Yours very truly,
THE STEERING WHEEL CO.

To this letter defendant replied, asking for an extension, as follows:

WOODS ELECTRIC.

Robert L. Fee, Prest. & Gen. Mgr.
Louis Rothschild, Vice Prest.
W. W. Bock, Sect. & Treas.

- FEE ELECTRIC CAR CO.,
    344-346 Jefferson Avenue.
Phone Main 786.                DETROIT, MICH., Sept. 17, 1908.

THE STEERING WHEEL COMPANY,
                Sidney, Ohio.
*Gentlemen:*
Your esteemed favor of the 15th inst. received; replying will say: we would much rather you would not draw on us for our account of $325.00 until Oct. 10th, as you must admit these chains were ordered out of season when there was absolutely no sale for them, we still have every one of them on hand and would appreciate it if you would let the matter rest until after Oct. 10th.

Trusting you will oblige us as above, we remain,
                        Yours truly,
                            FEE ELECTRIC CAR CO.,
                                Per W. F. DOYLE.

Later this request was granted by letter from plaintiff, dated September 18th.

On October 27th plaintiff wrote to defendant, calling attention to the fact, and asking for a remittance of the account.

On November 12th, defendant shipped the chains back to plaintiff, with the following letter of explanation:

                                    Nov. 12, 1908.
STEERING WHEEL CO.,
                Sidney, Ohio.
*Gentlemen:*
We are returning to you the 50 set Henry non-skid chains sent us some time ago for the reason that our customers will not use them, because the chain cuts the tires very badly and what few we have sold have been thrown back on our hands, and they say they won't use them under any circumstances. We do not think they will do at all for solid tires. On the car we tried them on they cut large pieces out of the tire and almost ruined them. In fact, we had to repair two tires on account of it. We are very sorry to be compelled to do this, but we certainly cannot use them.
                        Yours truly,
                            FEE ELECTRIC CAR CO.

On November 25th plaintiff acknowledged that they had notice that the skid chains had been received at Sidney, Ohio, by the railroad company, and refused to accept them, giving reasons therefor in the following letter:

THE STEERING WHEEL COMPANY.
Sidney, Ohio.

Nov. 25th, '08.

FEE ELECTRIC CAR CO.,
    Detroit, Mich.

*Dear Sirs:*

We have just received notice from local railroad station to the effect that they have on hand, consigned by you, a box of auto chains, for our account. However, in view of the fact that this sale was made by Mr. Henry, who is personally responsible, we are refusing the shipment, pending instructions from him.

We are advised by Mr. Henry that he is taking up the matter direct with you, and trusting that you can arrive at satisfactory adjustment, we remain,

Yours very truly,

THE STEERING WHEEL CO.

Not long after this was written, Mr. J. B. Tucker, the president of the plaintiff company, while in Detroit, had an interview with Mr. Fee in the presence of Mr. Jones, which resulted, as defendant claims, in a new agreement between them relative to these skid chains; that they were to be held by defendant for plaintiff, to be disposed of as fast as possible, the proceeds to be sent to plaintiff. Plaintiff disputes this claim, and Mr. Tucker denies that any new agreement was made. After this interview in Detroit, Mr. Tucker returned to Sidney, Ohio, and wrote defendant as follows:

THE STEERING WHEEL COMPANY,
Sidney, Ohio.

Dec. 17, 1908.

FEE ELECTRIC CAR CO.,
    Detroit, Mich.

*Dear Sirs:*

Agreeable to and in accordance with verbal conversation between Mr. Fee and the writer Tuesday morning last, please be kind enough to mail us an order authorizing the return of the Henry

non-skid chains to you. While this may not really be necessary yet the R. R. Co. requests some authority for their files.

Thanking you for immediate attention to this matter, and trusting that you will be successful in disposing of the chains, believe us to be,

Yours very truly,<br>The Steering Wheel Co.

J B T—G

The goods were reshipped to defendant, and an attempt was made to sell the parts to certain dealers, as defendant claims, as was suggested by Mr. Tucker; but no purchasers could be found.

At the close of the testimony of both sides, counsel for each moved for a directed verdict. The court denied the motion of defendant, and instructed a verdict for the plaintiff for the sum of $378.94. The case is before us for review upon writ of error. The errors relied upon by appellant are: *First*, that the court was in error in not submitting the question of warranty to the jury; *second*, that the court erred in not submitting to the jury the question of the new arrangement made between the parties in this case.

In all cases where a verdict is directed against the appellant, the case made by him upon the trial will be considered in the light most favorable to appellant which may be given it.

The court, in directing a verdict upon the contract between the parties, did so upon the theory that this was a sale of goods, by sample, upon an order given by defendant, accepted by plaintiff, and the goods shipped and delivered under it. Both parties in their briefs have accepted the theory that this was a sale by sample, defendant making no claim that the acceptance of this order, which is given in the statement of facts, which states the terms upon which the goods were shipped by plaintiff, might throw doubt upon such construction, but conceding that it was a sale by sample.

The court, in delivering his charge to the jury in directing a verdict for plaintiff, held that this was a contract of

purchase and sale by sample, complete in itself, and that oral testimony could not be introduced to vary its terms, and that there was no dispute that the goods furnished were not up to that sample, and that any representations of warranty given by plaintiff's agent not contained in the writing cannot be considered.

Defendant contends that if no express warranty can be shown, these non-skid chains were represented by the salesman, who was the inventor, as fit for the use for which they were sold, which was to prevent automobiles from skidding upon wet or icy highways, and that in any event plaintiff was the manufacturer of these goods and selling them for the purpose of use as non-skid chains; that in such case of a sale by sample the law implies a warranty that the goods were reasonably fit for the use for which they were designed.   There is no dispute in the case but that these articles were manufactured and sold by plaintiff, to be used for the purpose stated.   In fact, it appears from the record that they were not and could not be adapted to any other use.   The general rule of law in sales by sample is, as stated by Mr. Mechem, as follows:

"The warranty arising in these cases is that the bulk of the goods is fairly equal to the sample in nature, kind and quality, and if the bulk does so correspond the warranty is satisfied."   2 Mechem on Sales, § 1328.

Where, however, a manufacturer sells goods by sample for a special purpose, there is an implied warranty that the bulk and the sample shall be reasonably fit for the contemplated use.   2 Mechem on Sales, §§ 1331, 1343. This is a recognized implied warranty coexistent with the warranty arising in general rule above stated.

The circumstances in the instant case when this sale was made were that the plaintiff's agent came to defendant's place of business with an article for sale known as the "Henry Non-Skid Chains," of which this agent was the inventor.   At the time these chains were not known to the trade and were being introduced.   Plaintiff was

the manufacturer. This article could only be used for the purpose for which it was sold to defendant, as both parties to the transaction well knew.

There seems to be in the authorities no disagreement that the rule in such cases is that there is an implied warranty of the reasonable fitness of the article for the use intended, and from a careful examination of the cases upon the subject it is apparent that no distinction can be made in the application of this rule between cases of this class and cases where machinery or other articles are ordered from manufacturers for a certain specified purpose, where reliance is had upon the skill and judgment of such manufacturer. An early English case of this last class, decided in 1829, was *Jones* v. *Bright,* 5 Bing. p. 533.

In the notes to Mr. Mechem's valuable work, under the sections above cited, are many English and American cases to the same effect. In the case of *Leavitt* v. *Fiberloid Co.,* 196 Mass. 440 (82 N. E. 682), reported in 15 L. R. A. (N. S.) 855, a valuable case note upon this question of implied warranty will be found. Reference is also had to *Hallock* v. *Cutler,* 71 Ill. App. 471. In the examination of the many cases of the sale of food products by sample we have discovered no authority which holds against the rule above given, that there is an implied warranty on the part of the seller that such products shall be fit for use, and many of these cases are founded upon the rule of such implied warranty first established by the English courts.

We find, from an examination of the decisions of this court, such holding in the first case involving this question, where the sale involved an article of food, and the authorities relied upon to sustain the implied warranty of fitness for use, are the line of English authorities to which reference has already been made. *Hoover* v. *Peters,* 18 Mich. 51. In a recent case this court has treated this implied warranty as a well-settled doctrine, where property is bought for a particular purpose and where the articles

are for consumption. *Cook* v. *Darling*, 160 Mich. 475, 481 (125 N. W. 411), and cases cited.

We hold, therefore, that in the instant case, without reference to the claim at the trial on the part of defendant that there was an express warranty relative to the fitness of these goods for the purpose intended, as a matter of law, there was an implied warranty on the part of plaintiff that these goods were reasonably fit for the use for which they were purchased and sold. It follows that the trial court was in error upon this branch of the case in holding to the contrary and should have submitted the question of fact as to such fitness to the jury.

Upon the second branch of the case the contention of the defendant is that a new agreement was entered into between these parties relative to these non-skid chains, as already stated, and need not be here repeated; against this contention the court charged the jury that there was no consideration for that contract and because none of these chains were sold thereafter by defendant, and because the supplementary contract was not performed, therefore the original contract was in full force and effect and the defendant was liable. Upon this question we think that the trial court was also in error.

A reference to the statement of facts will show that it is admitted that plaintiff's president, representing his company, came to Detroit and had an interview with defendant's president. What occurred or what was agreed upon at that interview is not for us to determine.

The contention of defendant is that the consideration for the new agreement was that the plaintiff recognized that the goods could not be used for the purpose intended and the endeavor on the part of defendant to sell them for the plaintiff. The question involved is one well established upon authority, and one upon which this court has several times passed.

The contention of defendant is that such a verbal agreement, although at variance with the original contract between these parties, might be shown to have been made

and acted upon by both parties, and the testimony on be-half of defendant tended to show such fact.    This new agreement was denied absolutely by Mr. Tucker, plain-tiff's president.

As already stated, we are considering this case in the most favorable light for defendant, and, taking this testi-mony on its part as true, the question should have been submitted to the jury.    9 Cyc. p. 597, and cases cited; *Cook* v. *Darling, supra,* citing all the earlier decisions of this court.

The judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, BROOKE, STONE, OSTRAN-DER, and BIRD, JJ., concurred.