BLISS B. WARD *vs.* GREAT ATLANTIC AND PACIFIC TEA COMPANY.

Essex.    March 12, 1918. — September 11, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Sale,* Implied warranty.    *Food.    Evidence,* Matters of common knowledge.

Under the provision of the sales act contained in St. 1908, c. 237, § 15 (1), which in this respect is declaratory of the common law, a dealer who sells for food to a customer a sealed can of baked beans containing among the beans a pebble that looks like a bean, which breaks a tooth of the purchaser, can be found to be liable to the purchaser in an action of contract for his injuries thus sustained, there being in such a sale by a dealer, under the statute as at common law, an implied warranty that beans so purchased for food "shall be reasonably fit for such purpose." CROSBY, J., dissenting.

It was *said* that it is a matter of common knowledge that pebbles often are found in raw and uncleaned beans.

TORT (as stated in the writ) for the breaking of a tooth of the plaintiff on March 22, 1917, by a pebble contained in a can of

baked beans purchased by the plaintiff on March 16, 1917, at the store of the defendant in Ipswich.  Writ dated April 27, 1917.

In the Superior Court the case was submitted to *Jenney, J.,* upon a case stated, containing the facts which are described in the opinion.  At the request of the parties the judge reported the case for determination by this court as follows: "Report under Gen. Acts, 1917, c. 345.  This case came on to be heard before me upon a case stated by the parties embodied in a written agreement signed by both parties and filed herein.  At the request of both parties, I report the case to the Supreme Judicial Court for determination, without making any decision thereon."

The case was submitted on briefs.

*E. J. Carney, C. A. Green & J. F. Doyle,* for the plaintiff.

*G. R. Nutter & J. E. Peakes,* for the defendant.

RUGG, C. J.  The defendant conducts a retail grocery store at Ipswich.  It had for sale at this store beans in sealed all tin cans, bearing this label: "Grandmother's Brand A & P Beans & Pork with Sauce, contents 2 lbs. 1 oz."  "Remove contents of this can as soon as opened and place in earthenware dish."  "The Great Atlantic & Pacific Tea Co. Incorporated, Distributors, Jersey City, N. J., U. S. A."  These cans of beans were purchased by the defendant from the Thomas Canning Company of Grand Rapids, Michigan, after canning.  It furnished the labels which were affixed to the cans by the manufacturer.  The defendant had no supervision of the process of canning and no knowledge or means of knowledge that any foreign substance was in the cans.  Such cans are always sold to the public in a sealed condition.  The Thomas Canning Company is an independent reputable manufacturer of canned goods and in its processes employed all modern methods to prevent the presence of foreign substances in its products.  Its goods were widely distributed and were considered to be of good quality by the wholesale and retail stores which handled them.  On or about March 16, 1917, the defendant through the manager of its Ipswich store sold to the plaintiff one of these sealed cans of beans.  At no time after the sealing of the can until it was opened by the plaintiff was there visible indication that the contents were in any way defective or that the can contained any foreign substance.  The can contained baked beans, among which was a small pebble.  The plaintiff was ignorant of

its presence and, while eating the beans, broke his tooth on the pebble and later on account of this injury, was obliged to have the tooth extracted.

The case comes before us by report on a case stated. No point is open as to the form of action or pleadings. The only question is whether the plaintiff can recover in any form of action. *Smith* v. *Carney,* 127 Mass. 179. *Brettun* v. *Fox,* 100 Mass. 234.

The transaction between the plaintiff and the defendant as to the can of beans necessarily involved a purchase of food to be eaten. That need not be stated in precise words. It was an underlying and essential condition of the contract, implied without expression. It arose from the nature of the goods, the size of the purchase and the terms of the label. It is provided by the sales act, St. 1908, c. 237, § 15 (1): "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." That provision governs the relations of the parties in the case at bar. In this respect the statute is in substance, so far as concerns a dealer such as the defendant, simply a codification of the common law. It was said in *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 279, 280, 281, a case arising before the sales act, "Finally, provisions may be ordered by the purchaser in person. in the dealer's shop, in such a way that it is made known to the dealer that his knowledge and skill are relied on to supply wholesome food, and, if they are so ordered, he is liable if they are not fit to be eaten. . . . If the sale is by a dealer and the selection of food is left to him, it is an implied term or condition of the sale that the provisions sold shall be fit for food whether supplied under a pre-existing contract . . . or in response to an order not given in person . . . or even when the order is given in person in the dealer's shop, provided . . . that the selection is left to the dealer. . . . But, even when the sale is by a dealer, if the provisions are selected by the buyer and the selection is not left to the judgment and skill of the dealer, the general rule applies and the dealer is not liable (in the absence of knowledge by the dealer

that the provisions are unsound) if the provisions are not fit for food." The opinion in that case contains an exhaustive review of the authorities. See, also, in this connection, *Race* v. *Krum,* 222 N. Y. 410, 414, and *Cook* v. *Darling,* 160 Mich. 475, 481; *Parks* v. *C. C. Yost Pie Co.* 93 Kans. 334, 337, and L. R. A. 1917 F, note 472 to 475.

That statement of the law, which is but an amplification so far as relates to the case at bar, of the terms of the sales act, governs the facts here presented. The defendant was a dealer, the plaintiff a buyer at retail. There arises inevitably the implication that the plaintiff made known to the defendant that he was purchasing the beans for consumption as food and that he was relying, because from the character of the transaction he was bound to rely, upon the skill of the defendant in selecting the can which was offered to him.

It is not expressly stated in the agreed facts that the defendant selected the can for delivery to the plaintiff, or that the latter relied upon the skill and judgment of the defendant in selecting the can for delivery. But that he did so rely seems an almost irresistible inference from the facts stated. The cans in the defendant's stock were all alike in label and in general appearance. The cans were sealed. Their contents could not in the nature of things be open to inspection before the sale. There could be no intelligent selection based upon any observation by the purchaser. There is no room for the exercise of individual sagacity in picking out a particular can. The customer at a retail store is ordinarily bound to rely upon the skill and experience of the seller in determining the kind of canned goods which he will purchase, unless he demands goods of a definite brand or trade name. The situation is quite different from the choice of a fowl or a piece of meat from a larger stock, all open to inspection, where there is opportunity for the exercise of an independent judgment by both the buyer and the seller, and where, therefore, the fact as to the one who makes the selection is of significance, as in the Farrell case. The case at bar must be treated on the footing, as matter of necessary inference arising from the relation of the parties, so far as that is material in view of the other facts, that the plaintiff relied upon the knowledge and trade wisdom of the defendant in purchasing the can of beans. In the absence of an express state-

ment to the contrary, this must be regarded as a necessary in-
ference from the relation of the parties.

There appears to us to be no sound reason for engrafting an
exception on the general rule, because the subject of the sale is
canned goods, not open to the immediate inspection of the dealer,
who is not the manufacturer, any more than of the buyer. It
doubtless still remains true that the dealer is in a better position
to know and ascertain the reliability and responsibility of the
manufacturer than is the retail purchaser. But the principle
stated in *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, is a
general one. It has long been established. Simply because it
may work apparent hardship in certain instances is no reason for
changing it to fit particular cases. It is a salutary principle. It
has become wrought into the fabric of the law as the result of
long experience. It may be assumed that the affairs of mankind
have become adjusted to it. It has recently been adopted by the
Legislature in codifying the law as to sales. It imposes liability
in the absence of an express contract between the parties govern-
ing the subject. It places responsibility upon the party to the
contract best able to protect himself against original wrong of
this kind, and to recoup himself in case of loss, because he knows
or comes in touch with the manufacturer. In the case at bar the
plaintiff had no means of ascertaining the manufacturer from
inspection of the goods bought. The retail purchaser in cases of
this sort ordinarily would be at some disadvantage if his only
remedy were against the manufacturer.

It was said by Farwell, L. J., in the course of a judgment in the
Court of Appeal in *Jackson* v. *Watson & Sons,* [1909] 2 K. B. 193,
at page 202, "The plaintiff sues for breach of contract of warranty
of fitness for human food of certain tinned salmon supplied to and
eaten by himself and his wife, and there is not (and indeed since
*Frost* v. *Aylesbury Dairy Co.* [1905, 1 K. B. 608] there could not
well be) any question as to the sufficiency of his cause of action:
the only question is as to the damages." The Frost case related
to a sale of milk by a retail dealer. Both cases arose under the
English sale of goods act, § 14 (1), quoted at length in *Farrell*
v. *Manhattan Market Co.* 198 Mass. 271, at pages 278, 279,
which does not differ in any particular material to the present
case from § 15 (1) of our sales act. It is manifest, therefore, that

the English courts hold that under the sale of goods act there is no distinction between canned goods and goods not canned and open to inspection, so far as concerns the implied warranty of fitness in sales of food to the ultimate consumer.  Decisions of this character, in view of the fact that the English sale of goods act was enacted before our own, and of the close similarity of the pertinent section of each act, are entitled to consideration.  See *McNicol's Case*, 215 Mass. 497, 499.   Decisions of an inferior court in Illinois are precisely to the same effect, namely, that in sales by a retail dealer to a consumer canned goods are on the same footing as other foods, *Sloan* v. *F. W. Woolworth Co.* 193 Ill. App. 620, *Chapman* v. *Roggenkamp,* 182 Ill. App. 117, being based upon *Wiedeman* v. *Keller,* 171 Ill. 93.

There is nothing in *Winsor* v. *Lombard,* 18 Pick. 57, inconsistent with the conclusion here reached.  That was a sale of goods by description by one dealer to another dealer.  Both parties were taken to rely upon the description of the goods sold which was founded on an inspection and branding under inspection laws.  Apparently it was a sale of specified goods under a trade name such as is now covered by § 15 (4) of the sales act, and where there is no implied warranty of fitness for any particular purpose.  It is pointed out in the opinion in that case, at page 62, that it was not intended to apply to sale of food at retail for immediate use.  It is to be noted that *Walden* v. *Wheeler,* 153 Ky. 181, and *Bigelow* v. *Maine Central Railroad,* 110 Maine, 105, 110, each arose at common law and not under a sales act.  But if and so far as they are inconsistent with the conclusion here reached, we cannot follow them.

No discussion is required to demonstrate that canned beans and pork are not fit for consumption if they contain a pebble of sufficient size to break a tooth.  It is matter of common knowledge that pebbles often are found in raw and uncleaned beans.  In domestic use, careful sorting is required to free them from such substance.  It is or may be found lack of due care for one to prepare beans for eating with pebbles still among them.  See *Watson* v. *Augusta Brewing Co.* 124 Ga. 121.

It follows that the plaintiff is entitled to recover, and since it is agreed that his damages are $350, judgment may be entered in his favor for that sum.

*So ordered.*

CROSBY, J.   I cannot agree with the decision of the majority; and as the question presented has not before arisen in this court, I feel it to be my duty that I should state my views.

The plaintiff received an injury to his tooth while eating baked beans among which was a small pebble.   The beans were purchased by the plaintiff at the defendant's store, and were contained in a sealed tin can.   They were purchased by the defendant, with other beans in tin cans, from the manufacturer, the Thomas Canning Company, of Grand Rapids, Michigan.   The labels upon all the cans described the defendant merely as "Distributors."   There is nothing to indicate that the defendant prepared or manufactured the contents, — no contention to that effect is made; and it is not contended that the presence of the pebble in the can, or the plaintiff's injury, was due to any negligence whatever on the part of the defendant.   Although it is stated in the opinion that "It is or may be found lack of due care for one to prepare beans for eating with pebbles still among them," I do not understand the opinion to hold the defendant liable for negligence, but upon an implied warranty that the beans in the can were free from foreign substances and fit for human consumption.

The case comes before us by report on a case stated, in which it appears that the beans purchased by the plaintiff "were canned in a tin can such as is ordinarily used for such canning, and at no time after the sealing of the can and until it was opened by the plaintiff was there any visible indications that the contents were in any way defective or that the can contained any foreign substance. . . . The defendant had no supervision of the process of canning these beans and had no knowledge or means of knowledge of the presence of the pebble in the can.   Such cans are always sold to the public in a sealed condition.   The Thomas Canning Company is and was at all times an independent reputable manufacturer of canned goods, and in its canning process employed all modern methods to prevent the presence of foreign substances in its canned products.   The products of the company were widely distributed and were considered by the wholesale and retail stores which handled them to be of good quality."

It is provided by our sales act, St. 1908, c. 237, § 15 (1), "Where the buyer, expressly or by implication, makes known

to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

The above quoted clause of the act does not differ from the rule as it existed before the enactment of the statute, but is declaratory of the common law so far as pertinent to this case.

I agree that the transaction was a purchase and sale of food to be eaten, and was so understood by the defendant. Notwithstanding this fact, in order that it may be charged upon an implied warranty that the goods sold shall be fit to be eaten, it must further appear, both at common law and under the act, "that the buyer relies on the seller's skill or judgment;" unless there is something to show that the plaintiff relied on the defendant's skill or judgment it is plain that the defendant cannot be charged with liability upon an implied warranty. That the plaintiff relied on the skill or judgment of the defendant in making the purchase, is not expressly stated in the report; nor, in my opinion, can it reasonably be inferred from the facts stated.

It appears that the cans in the defendant's stock of canned goods from which the plaintiff made the purchase in question were labelled alike, all were sealed, and their appearance was so similar that there was no way in which the contents of one could be distinguished from another. The fact that the cans were sealed made inspection of their contents before the sale impossible. It may fairly be inferred that it was necessary, in order to preserve the contents, that the cans should be sealed. There was no way in which the defendant as a seller could inspect or analyze or otherwise determine the quality or fitness of the contents of the cans before they were sold by him.

It was his duty to furnish to his customers goods of a reputable brand, properly inspected and prepared in accordance with approved methods, and purchased of a reputable manufacturer. It is agreed that in all respects the defendant fully complied with these requirements. While the plaintiff could make no intelligent selection based upon an observation of the can containing the beans, his situation was the same as that of the defendant. The position of a purchaser and that of a seller in selecting a par-

ticular can so as to be able to judge of the quality, wholesomeness and fitness for food of its contents, are identical. Under such a sale of canned goods, it seems plain that the buyer does not rely on the seller's skill or judgment: the buyer knows that the article he purchases is in a sealed can; he knows that it is impossible for the seller to have any more knowledge of the contents of the can than he (the buyer) has. They are in precisely the same situation, — they are upon an equal footing. How, then, can it be said that the buyer relies upon the skill or judgment of the seller? How can it reasonably and fairly be inferred from the agreed facts in this case that the plaintiff relied upon the skill or judgment of the defendant in selecting the can sold to him (the plaintiff) when the latter was fully aware of the fact that the defendant could not possibly have any knowledge of its contents? In my opinion, upon the facts stated, to infer that the plaintiff relied on the defendant's skill or judgment would be wholly unwarranted. The reasoning of the able opinion in *Bigelow* v. *Maine Central Railroad*, 110 Maine, 105, seems to me to apply with equal force to this case.

I am aware that in some jurisdictions a seller of food in sealed cans has been held liable upon an implied warranty, but it does not seem to me that such decisions are in accordance with sound principles. The rule which governs where a piece of meat, or other article of food which is open to examination and inspection, is sold, has no application to a sale of canned goods under the circumstances as described in the present case.

The case of *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, and similar cases, are clearly distinguishable upon the ground that the buyer in purchasing canned goods does not and cannot in the nature of things rely upon the skill or judgment of the seller. The distinction between a sale of provisions which are open for inspection and those which are sold in sealed packages or closed cans was pointed out by Chief Justice Shaw in *Winsor* v. *Lombard*, 18 Pick. 57, at page 62, and referred to in *Bigelow* v. *Maine Central Railroad, supra.* In the case last referred to, it was said at pages 110 and 111, that if the rule laid down in *Winsor.* v. *Lombard* is to be followed, "the only possible conclusion is, that the parties understood the matter precisely alike, and that the defendant sold, and the plaintiff bought, exactly

what she ordered. She, therefore, assumed the risk of its imper-
fections, as there was no possible way, either for her or the
defendant, consistent, with the practical use of the product, to
test its quality."

In the absence of negligence, I do not think the defendant
should be held liable. The effect of the decision of the majority
is to charge it with liability as an insurer. It would seem to be
more in accord with the principles of justice and reason to hold
that the plaintiff should seek his remedy against the manufacturer
who alone caused the injury.