## COIGNARD v. F. W. WOOLWORTH & CO.*

### No. 16669.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

*Rehearing denied Oct. 4, 1937.

124 

Maurice B. Gatlin, of New Orleans, for appellant.

John May, of New Orleans, for appellee.

## WESTERFIELD, Judge.

Mrs. Anna Coignard in her own behalf and on behalf of her minor daughter brought this suit against F. W. Woolworth & Co., a New York corporation, doing business as a retail dealer in the city of New Orleans, for damages for which the defendant is alleged to be responsible. She seeks reimbursement of $140.20 expended by her for medical services and other expenses and claims $5,000 for pain and suffering endured by her daughter. In her petition she alleges that in the month of October, 1936, she purchased a "Superfine" toothbrush from defendant for the use of her daughter, which toothbrush, according to the inscription thereon, was made in Japan; that when her daughter attempted to use the toothbrush the bristles became detached from the frame and lodged in her daughter's throat causing serious and painful injuries and necessitating an operation for the removal of the bristles; that "defendant in selling petitioner said toothbrush, guaranteed to petitioner that said toothbrush was in fit and proper condition to be used for the purpose of cleaning and brushing teeth; and petitioner avers that the injuries to her minor daughter were caused entirely by the failure of defendant to see that said toothbrush, which she purchased in good faith, was in fact in a serviceable and usable condition and fit to be used for the purpose for which it was sold."

To petitioner's claim for expenses incurred by her in the treatment of her daughter, defendant filed an exception of no cause or right of action and to the claim on her daughter's behalf for pain and suffering an exception of want of capacity to stand in judgment.

Both exceptions were maintained and plaintiff's suit dismissed. She has appealed to this court.

 The exception of want of capacity is based upon the failure to allege that Mrs. Coignard qualified as tutrix of her minor child. This exception, as conceded by counsel for plaintiff in oral argument, was properly maintained. R.C.C. arts. 235, 246, and 335; Code Prac. art. 108; Koepping v. Monteleone, 143 La. 353, 78 So. 590; Mc-Vay v. New Orleans Public Service, Inc. (La.App.) 148 So. 67.

 The exception of no cause of action is also conceded to be sound in so far as the prevailing jurisprudence is concerned, but we are asked to depart from the severity of the doctrine of the established cases in order to accomplish a more equitable result. It is pointed out that the plaintiff in this case is in necessitous circumstances, as evidenced by the fact that the suit is brought in forma pauperis, and that it would be impossible for her to maintain an action in the Japanese Empire against the manufacturer of the toothbrush; that in purchasing the toothbrush she relied upon the good faith of the vendor; and that she did not know and could not ascertain the name or the reputation of the Japanese manufacturer In other words, it is largely upon the theory of convenience that plaintiff seeks to recover. Some consideration has been given this contention in other jurisdictions.

In Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 389, 90 A.L.R. 1260, the Supreme Court of Connecticut stated the rule in the common law as follows:

"There is practically unanimity of modern authority, that both under common law and the Sales Act, upon the sale of food to be immediately put to domestic uses, there is, as between dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten, including freedom from foreign substances which may be injurious to the consumer. Farrell v. Manhattan Market Co., 198 Mass. 271, 84 N.E. 481, 15 L.R.A.(N.S.) 884, 126 Am.St.Rep. 436, 15 Ann.Cas.1076; Race v. Krum, 222 N.Y. 410, 118 N.E. 853, L.R.A.1918F, 1172; Cook v.

Darling, 160 Mich. 475, 125 N.W. 411; Parks v. C. C. Yost Pie Co., 93 Kan. 334, 144 P. 202, L.R.A.1915C, 179; note, L.R.A. 1917F, 472; Nock v. Coca Cola Bottling Works, 102 Pa.Super. 515, 156 A. 537. Recognition of an exception, as to canned goods, from this general rule, where given, is largely based upon assumptions that as to such goods the seller has no means of knowledge, opportunities for inspection, or other sources of information which are not shared by the purchaser, and that the latter from the nature of the transaction must know this and therefore cannot be said to rely on skill or knowledge of the seller founded upon superior information or opportunity for obtaining it. Bigelow v. Maine C. R. Co., 110 Me. 105, 85 A. 396, 43 L.R.A.(N.S.) 627 (unwholesome asparagus served from a can); Scruggins v. Jones, 207 Ky. 636, 269 S.W. 743 (tainted canned shrimp); Aronowitz v. F. W. Woolworth Co., 134 Misc. 272, 236 N.Y.S. 133 (canned tunafish); Julian v. Laubenberger, 16 Misc. 646, 38 N.Y.S. 1052 (canned salmon). As to this consideration, Williston on Sales (2d Ed.) § 242 observes: 'The same argument, however, may be made in regard to any implied warranty, not only of food, but of other articles where the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective foods than in any other kinds of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of reputable brand.'"

And in the case of Ward v. Great Atlantic & Pacific Tea Company (1918) 231 Mass. 90, 120 N.E. 225, 226, 5 A.L.R. 242, there appears the following which is quoted in the Burkhardt Case:

"There appears to us to be no sound reason for ingrafting an exception on the general rule, because the subject of the sale is canned goods, not open to the immediate inspection of the dealer, who is not the manufacturer, any more than of the buyer. It doubtless still remains true that the dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer than is the retail purchaser. But the principle * * * is a general one. It has long been established. Simply because it may work apparent hardship in certain instances is no reason for changing it to fit particular cases. It is a salutary principle. It has become wrought into the fabric of the law as the result of long experience. It may be assumed that the affairs of mankind have become adjusted to it. It has recently been adopted by the Legislature in codifying the law as to sales. It imposes liability in the absence of an express contract between the parties governing the subject. It places responsibility upon the party to the contract best able to protect himself against original wrong of this kind, and to recoup himself in case of loss, because he knows or comes in touch with the manufacturer. In the case at bar the plaintiff had no means of ascertaining the manufacturer from inspection of the goods bought. The retail purchaser in cases of this sort ordinarily would be at some disadvantage if his only remedy were against the manufacturer."

See also, Tulane Law Review, December 1935, page 153.

But whatever may be the rule elsewhere, under express codal provisions in Louisiana, the vendor, who is not shown to be acquainted with the vices of the thing sold, is bound only to restore the price and to reimburse the expense occasioned by the sale. The following articles are pertinent and conclusive of the issue:

Article 2475: "The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."

Article 2476: "The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices."

Article 2520: "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

Article 2521: "Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."

Article 2529: "A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to

have, gives rise to a redhibition, if this quality was the principal motive for making the purchase."

Article 2530: "The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."

Article 2531.: "The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses."

Articles 2545: "The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."

Unless the vendor knew of the vice of the thing sold and failed to declare it, he cannot be held answerable in damages. No allegation to this effect is found in the petition, nor is there any charge of negligence.

The judgment appealed from is, for the reasons herein assigned, affirmed.

Affirmed.

