## GAS TRACTION COMPANY, a Corporation, v. J. H. STENGER.

(159 N. W. 32.)

**Warranties — express — implied — breaches of — evidence — defenses — counterclaims.**

Evidence examined and *held* that, for reasons stated in the opinion, defenses and counterclaims based upon alleged breaches of express and implied warranties have not been established.

Opinion filed August 10, 1916.

From a judgment of the District Court of Richland County, *Allen,* J., defendant appeals.

Affirmed.

*J. A. Dwyer* and *Wolfe & Schneller,* for appellant.

The whole contract is an example of rare ingenuity, and comes very

near being inherently fraudulent on its face, and void as against public policy. The defendant was an unsuspecting purchaser. He relied upon what the agent said and read to him, and supposed that the instrument he signed contained just what the agent had read to him. This agent was a soliciting agent of the plaintiff, to get this application signed, and to make this sale, and he had undoubted authority and power to represent to defendant that what he read was just what the paper contained. Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799.

It is the established law of this state that unless the paper expressly cuts off all warranties, it must be construed as applying solely and only to warranties by contract between the parties, and as not applying to warranties implied by law. Northwestern Cordage Co. v. Rice, 5 N. D. 432, 57 Am. St. Rep. 563, 67 N. W. 298; Hooven & A. Co. v. Wirtz, 15 N. D. 477, 107 N. W. 1078.

*Lawrence & Murphy,* for respondents.

Justice is nothing more or less than conformity to some obligation law, and all human actions are either just or unjust as they are in conformity to or in opposition to law. Borden v. State, 11 Ark. 519, 54 Am. Dec. 217; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145.

Courts cannot annul or construe away an agreement otherwise legal, on the sole ground that in its enforcement it operates harshly in a given case which is presented for determination. Minnesota Thresher Mfg. Co. v. Lincoln, supra; Aultman & T. Machinery Co. v. Runck, 23 N. D. 579, 137 N. W. 831.

Defendant having elected to affirm the contract, he must now, after four years, abide by it. Sturtevant Mill Co. v. Kingsland Brick Co. 74 N. J. L. 492, 70 Atl. 732; Charter Gas & Engine Co. v. Barton, — Ala. —, 39 So. 985; Southwestern Portland Cement Co. v. O. D. Harvard Co. — Tex. Civ. App. —, 155 S. W. 656.

"Where the contract provides for a return of the goods if unsatisfactory, the buyer cannot relieve himself or liability for the price unless he returns or offers to return them, and the offer to return must be unconditional." Walsh Mfg. Co. v. Plymouth Lumber Co. 159 N. C. 507, 75 S. E. 718; Berlin Mach. Works v. Ewart Lumber Co. 184 Ala. 272, 63 So. 567; Slawson v. Albany R. Co. 3 Thomp. & C.

768, 1 Hun, 438; Dewey v. Erie, 14 Pa. 211, 53 Am. Dec. 533; International Filter Co. v. Cox Bottling Co. 89 Kan. 645, 132 Pac. 180; Darling v. Manistee, 166 Mich. 35, 131 N. W. 450; Gray v. Consolidated Ice Mach. Co. 103 Ga. 115, 29 S. E. 604; Fred W. Wolf Co. v. Northwestern Dairy Co. 55 Wash. 665, 104 Pac. 1123; Fred W. Wolf Co. v. Monarch Refrigerating Co. 252 Ill. 491, 50 L.R.A. (N.S.) 808, 96 N. E. 1063.

Defendant must comply with the terms of the contract, and he must establish the fact that he has done so, as a condition precedent to his right of recovery. He has failed to do so in this case, and he has no remedy in court for damages or otherwise. Allen v. Tompkins, 136 N. C. 208, 48 S. E. 655.

Defendant's conditions of the contract must have been performed by him, or any remedy he might have had for a breach is lost. Fetzer v. Haralson, — Tex. Civ. App. —, 147 S. W. 290.

"When a vendee of personal property has agreed that if there is a breach of warranty he will return the property, its return is the only condition on which he can rely on a broken warranty." Osborne v. Traylor, 8 Ky. L. Rep. 359; Chase Hackley Piano Co. v. Kennedy, 152 N. C. 197, 67 S. E. 488; Walsh Mfg. Co. v. Plymouth Lumber Co. 159 N. C. 507, 75 S. E. 718; W. F. Main Co. v. Griffin-Bynum Co. 141 N. C. 43, 53 S. E. 727; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 424, 61 N. W. 145; Fahey v. Esterly Mach. Co. 3 N. D. 220, 44 Am. St. Rep. 554, 55 N. W. 580.

So, when the contract for the purchase of a threshing machine, under warranty, requires notice of defects to be given the company or vendor, and there has been failure on the part of the purchaser to claim any defects and failure to give notice within the time specified in the contract, or to return or offer to return the property, he has no standing in court to resist on any ground or breach of warranty, in an action for the purchase price. Gaar, S. & Co. v. Green, 6 N. D. 48, 68 N. W. 318; Aultman & T. Machinery Co. v. Wier, 67 Kan. 674, 74 Pac. 227; Seiberling v. Rodman, 14 Ind. App. 460, 43 N. E. 38; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145; McCormick Harvesting Mach. Co. v. Allison, 116 Ga. 445, 42 S. E. 778; Eichelroth v. Long, 156 Ill. App. 108; Hasenwinkle Grain Co. v. Dooley, 130 Ill. App. 75; Westbrook v. Reeves, 133 Iowa, 655, 111 N. W. 11; Gaar,

S. & Co. v. Hodges, 28 Ky. L. Rep. 889, 90 S. W. 580; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299, 87 S. W. 62; Heagney v. J. I. Case Threshing Mach. Co. 4 Neb. (Unof.) 745, 96 N. W. 175, rehearing in 4 Neb. (Unof.) 753, 99 N. W. 260; Rowell v. Oleson, 32 Minn. 288, 20 N. W. 227; Hinchcliffe v. Barwick, 49 L. J. Exch. N. S. 495, L. R. 5 Exch. Div. 177, 42 L. T. N. S. 492, 28 Week. Rep. 940, 44 J. P. 615; Mesnard v. Aldridge, 3 Esp. 271; Hamilton v. Northey Mfg. Co. 31 Ont. Rep. 468; King v. Towsley, 64 Iowa, 75, 19 N. W. 859; Dunham v. Salmon, 130 Wis. 164, 109 N. W. 959; Sessions v. Hartsook, 23 Ark. 519; Kirk v. Seeley, 63 Mo. App. 262; J. I. Case Threshing Mach. Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; Walters v. Akers, 31 Ky. L. Rep. 259, 101 S. W. 1179; Wilson v. Nichols & S. Co. 139 Ky. 506, 97 S. W. 18; Haynes v. Plano Mfg. Co. 36 Tex. Civ. App. 567, 82 S. W. 532; Bomberger v. Griener, 18 Iowa, 477; Himes v. Kiehl, 154 Pa. 190, 25 Atl. 632; F. C. Austin Mfg. Co. v. Clendenning, 21 Ind. App. 459, 52 N. E. 708; Davis v. Gosser, 41 Kan. 414, 21 Pac. 240; Hoover v. Doetsch, 45 Ill. App. 631; Birch v. Kavanaugh Knitting Co. 34 App. Div. 614, 54 N. Y. Supp. 449, affirmed in 165 N. Y. 617, 59 N. E. 1119; Miller v. Nichols, 5 Neb. 478; James v. Bekkedahl, 10 N. D. 120, 86 N. W. 226; McCormick Harvesting Mach. Co. v. Arnold, 116 Ky. 508, 76 S. W. 323; Nichols & S. Co. v. Miller, 76 Neb. 809, 107 N. W. 1010; Williams v. Donaldson, 8 Iowa, 108; Hills v. Bannister, 8 Cow. 31.

An express warranty excludes any implied warranty. The contract here provides: "It is mutually agreed that said engine, fixtures, and equipment are purchased upon the following warranty only."

This brings this case squarely within the rule laid down by our court. Dowagiac Mfg. Co. v. Mahon, 13 N. D. 522, 101 N. W. 903; Blackmore v. Fairbanks, M. & Co. 79 Iowa, 282, 44 N. W. 548; Lynch v. Curfman, 65 Minn. 170, 68 N. W. 5; Wasatch Orchard Co. v. Morgan Canning Co. 32 Utah, 229, 12 L.R.A.(N.S.) 540, 89 Pac. 1009; Bucy v. Pitts Agri. Works, 89 Iowa, 464, 56 N. W. 541.

Defendant is limited to the express written agreement, and cannot rely upon any oral statements or assertions made to him, if any, by the experts or salesmen as to what plaintiff would do. Annis v. Burnham, 15 N. D. 577, 108 N. W. 549; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Foster v. Furlong, 8 N. D. 282, 78 N. W. 986;

Dowagiac Mfg. Co. v. Mahon, 13 N. D. 516, 101 N. W. 903; Houghton Implement Co. v. Doughty, 14 N. D. 331, 104 N. W. 516; Western Electric Co. v. Baerthel, 127 Iowa, 467, 103 N. W. 475; Apking v. Hoefer, 74 Neb. 325, 104 N. W. 177.

Misrepresentations render the contract of sale voidable only, but the party relying upon the fraud must act promptly in making his election, whether he would acquiesce in or repudiate the contract. If he fails to rescind the contract promptly, he will be bound by it to the same extent as though it was binding in the first instance. Annis v. Burnham, 15 N. D. 582, 108 N. W. 549; Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026; Chilson v. Houston, 9 N. D. 498, 84 N. W. 354.

Further, he affirms the contract by his acceptance of the fruits of the transaction, in the long and continued beneficial use of the machine, in plowing, harvesting, and threshing. 20 Cyc. 92; Kingman & Co. v. Stoddard, 29 C. C. A. 413, 57 U. S. App. 379, 85 Fed. 740; Grymes v. Sanders, 93 U. S. 55, 62, 23 L. ed. 798, 801, 10 Mor. Min. Rep. 445; McLean v. Clapp, 141 U. S. 429, 35 L. ed. 804, 12 Sup. Ct. Rep. 29; Fitzpatrick v. Flannagan, 106 U. S. 648, 27 L. ed. 211, 1 Sup. Ct. Rep. 369.

Further, defendant voluntarily made payments. People v. Stephens, 71 N. Y. 527; Selway v. Fogg, 5 Mees. & W. 83, 151 Eng. Reprint, 36, 8 L. J. Exch. N. S. 199; Saratoga & S. R. Co. v. Row, 24 Wend. 74, 35 Am. Dec. 598; Parsons v. Hughes, 9 Paige, 592; Gilmer v. Ware, 19 Ala. 252; Thweatt v. McLeod, 56 Ala. 375; Doherty v. Bell, 55 Ind. 205; St. John v. Hendrickson, 81 Ind. 353; Whiting v. Hill, 23 Mich. 399, 6 Mor. Min. Rep. 692; Craig v. Bradley, 26 Mich. 369; Dailey v. King, 79 Mich. 568, 44 N. W. 959; McEacheran v. Western Transp. & Coal Co. 97 Mich. 479, 56 N. W. 860; Western Electric Co. v. Hart, 103 Mich. 477, 61 N. W. 867; Schmidt v. Mesmer, 116 Cal. 267, 48 Pac. 54; Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047.

CHRISTIANSON, J. This is an action to foreclose a chattel mortgage given to secure three promissory notes. The complaint is in the usual form. The answer admits the execution and delivery of the notes and chattel mortgage, but alleges (both by way of answer and counterclaim) that the notes were executed and delivered by defendant to plaintiff

in consideration of a certain "Big Four" traction engine; that defendant was induced to purchase said engine by reason of certain representations and warranties made to the defendant by the representatives of the plaintiff, and that said engine failed to comply with said representations and warranties.

The controlling facts may be summarized as follows: On October 27, 1911, the defendant, Stenger, at Hankinson, North Dakota, signed an order for the purchase from the plaintiff of a "Big Four" tractor. The defendant testified that the business was transacted with one Aller, a traveling salesman of plaintiff, and that A. G. Peterson, plaintiff's local agent at Hankinson, was also present at the time and participated therein. The usual printed form of contract was used. The portions of said contract involved in this. action are as follows: "The undersigned agrees after . . . . days' trial of said engine, in such field work as the undersigned may elect, under the supervision of such operator, if said engine develops thirty horse power at the drawbar; if the steering device will guide the engine while plowing, as well as any man; if it will plow an acre of ground in favorable soil with from 1 to 1½ gallons of gasolene (breaking sod requiring more fuel); if it will furnish ample power to drive any 40-inch cylinder threshing machine, complete with self-feeder, weigher, and blower manufactured in the United States; if said engine will upon level ground and in suitable soil pull from six to eight 14-inch breaking plows or eight to ten 14-inch stubble plows, and if the undersigned is satisfied from such trial that said engine will perform all the conditions hereinbefore stated,—that the undersigned will, at the expiration of such . . . . days' trial, purchase said engine, fixtures, and equipment, and pay therefor the sum of $2500 as follows: One note for $500, due on or before June 1st, 1912; one note for $1,000, due on or before October 1st, 1912; one note for $1,000, due on or before October 1st, 1913,—each and all of said promissory notes to be secured by a first mortgage on said gas traction engine fixtures and equipment, and also by chattel mortgage on four (4) mules, weight about 1,400 lbs.

"If said engine, fixtures, and equipment are not so purchased, the undersigned agrees within two days after the expiration of such . . . . days' trial to return the same to said railway station; and said undersigned further agrees that his failure to so return said engine,

fixtures, and equipment within two days after said . . . . days' trial shall be an acceptance and purchase of said engine, fixtures, and equipment by the undersigned at the price and upon the terms and conditions hereinbefore stated.

"It is mutually agreed that said engine, fixtures, and equipment are purchased upon the following warranty only *viz:* A. Should any of the hardened cut steel gears on said engine break, wear out, or become defective within five years from the date of said purchase, said Gas Traction Company will, upon demand therefor, replace them by delivering such parts on board cars at Minneapolis, Minnesota. B. Should any parts (except electrical parts) prove defective within one year from the purchase of said engine on account of inferior material or workmanship, and such parts be returned to the Gas Traction Company at its factory at Minneapolis, Minnesota, transportation prepaid thereon, and be found by the Gas Traction Company to be defective on account of such inferior material or workmanship, said company will furnish new parts in lieu of such defective parts on board cars at Minneapolis, Minnesota.

"It being expressly agreed that the retention of said engine beyond the time above specified shall be a waiver of all other representations, warranties, terms, or conditions upon which said engine is ordered or purchased.

"It is further agreed that this order and agreement is given and accepted, and the sale and purchase of said engine, fixtures, and equipment are made, upon the express condition that this order and agreement contains all the terms and conditions of the sale and purchase of said engine, fixtures, and equipment, and cannot in any manner be changed, altered, varied, or modified without the written consent of an officer of said Gas Traction Company; that the sending of any person by the Gas Traction Company to repair or operate said engine, or the remaining of the person sent to start said engine, after the expiration of said . . . . days' trial, shall in no manner waive, modify or annul any of the terms or conditions hereof."

The engine covered by the contract was at Hankinson and had been examined by Stenger prior to the execution of the order or contract. The defendant also testified that Aller, the traveling salesman, read the order to defendant before it was signed. On direct examination de-

fendant stated that he recalled all portions of the order being read except the following: "The Gas Traction Company shall not be responsible for any delay in shipping said engine caused by accidents, strikes, or other unavoidable circumstances, and this order and agreement is not binding upon the Gas Traction Company until approved by said company by an officer signing the same." And defendent does not testify that this clause was not read, but he merely says he doesn't remember whether it was read or not. No claim made by either party is based upon this clause, however, and it is of no material consequence under the contentions of the parties in this case.

The printed contract form provided for a three-day trial period, and Stenger testified that when it was read to him by Aller, he (Stenger) objected to this period as being too short and insisted on being allowed at least six days' trial, and that thereupon Aller changed the printed form by inserting "6" instead of "3" in the various places so as to allow a six, instead of a three, day trial period. After the execution and delivery of the order or contract, the engine was taken out to defendant's farm as provided by the contract.

The defendant tried out the new engine a day of two in plowing, but did not test it for gasolene consumption, and defendant states that the engine "plowed good." An expert, Martin, was called and spent two or three days on Stenger's farm, and while the expert was there the defendant tried the engine in threshing flax with a 42x70 Avery Separator, and during such test the thresher clutch broke. No further tests were made so far as threshing was concerned, but the defendant continued to use the engine, and plowed with it the rest of the fall until it froze up. A day before the expiration of the six-day period, the defendant voluntarily went to town and made settlement therefor by executing the notes and chattel mortgage involved in this action. The defendant used the engine for plowing after settlement in the fall of 1911, for more than six days, and on May 23, 1912, he paid the first note for $500, which would have become due on June 1, 1912.

In the harvest season of 1912, the engine pulled three binders, and practically all of defendant's crop on a $600-acre farm was harvested therewith. In September, 1912, the defendant purchased a new 36x60 Avery Separator, and used the "Big Four" engine and threshed therewith in all about 1,000 acres. At this time the various difficulties with

the threshing attachment, of which defendant complains, developed, and plaintiff's expert, Martin, made two trips to defendant's farm to replace broken friction blocks on this attachment. On November 29, 1912, the defendant paid $1,000 on the second note, and on December 2, 1912, he paid the balance of such note, amounting to $92.

Defendant also testified that this note had been protested for non-payment by the First National Bank of Hankinson, and that he there-upon requested the plaintiff to send the note to the Citizens National Bank instead, and that after selling some grain to procure the necessary moneys, he went to this bank and paid the full amount due upon said note in the manner above stated. Hence, only the last note described in the order remains unpaid, and is the one upon which this action is based.

The trial court made findings of fact and conclusions of law in favor of the plaintiff upon all issues, and the defendant, Stenger, has appealed from the judgment entered thereon, and demanded a trial *de novo* in this court.

In his brief appellant asserts that the judgment ought to be reversed because: "1. By the fraud of Aller, the minds of the contracting parties were precluded from meeting, and the instrument was thereby vitiated *in toto* as a contract. 2. If that be not so still it is vitiated in all matters relating to the time of trial the right to rescind, and the defendant's right to affirm the sale and recover damages."

Appellant's entire argument in support of these propositions is based upon the assumption that the traveling salesman did not, as a matter of fact, alter the printed form so as to allow a six, instead of a three, day trial period, and that his representations to the defendant, Stenger, that the contract had been so changed were, as a matter of fact, false.

The record shows that upon the trial plaintiff's attorney did not have the original contract signed by defendant, but introduced in evidence in lieu thereof (without objection) one of the regular printed forms of the plaintiff with the understanding that the original contract was to be presented as evidence without any formality as soon as plaintiff's attorney procured it from his client. The printed blank was used upon the trial during the examination of defendant, and it is conceded that this is the form which defendant signed. The record, however, shows that the original order was never produced. The reason why

is not disclosed by the record, but on argument in this court, plaintiff's counsel asserted that the reason for the failure to file the same was that it had become lost.

In its findings of fact the trial court set out *in haec verba* the order signed by defendant, and in so doing apparently overlooked the testimony of the defendant relative to the alteration of the order as regards the length of the trial period, and the order set forth in the court's findings therefore is in accordance with the printed form, and provides merely for a three-day period of trial. Hence defendant's counsel argues that the order which the trial court found that defendant signed is materially different from the one which defendant was led to believe that he signed. In his brief defendant's counsel says: "The whole case hinges upon the question whether or not exhibit C-1 (the order) is or is not a valid, binding contract cutting off such rights (the rights to assert warranties). *If it is, plaintiff must recover.* If it is not the defendant must on this record recover." And, again: "Was there a fixed time specified in the real contract made between the plaintiff and defendant, beyond which time a retention of the engine would work a forfeiture of these rights on the part of the defendant? The paper says, 'Yes; three days.' The defendant signed that paper. *Unless that paper limitation is vitiated by fraud, it must control.* That brings us back to the first and second propositions specified in our argument. '1. By the fraud of Aller, exhibit C-1 was vitiated *in toto.*' '2. If that be not so, still it was vitiated in all matters relating to the time of trial, the right to rescind, the limitation of defendant's rights to rescission, and the attempt to force defendant to waive his common-law rights and remedies.' Defendant, when Aller was reading exhibit C-1 to him, refused to deal or to sign the paper with the three-day trial limitation in it. Aller said he would change that and make it six days. He took a pen or pencil and pretended to make the change. Then he read the paper to defendant as having been changed in every place from three to six days. The paper was then signed by defendant. It was not changed at all, but contained the original, printed, three days' limitation. It was submitted to the plaintiff company, and approved as printed."

The only testimony on the question of alteration of the order was that of the defendant, who testified as follows on his direct examination:

Q. In that talk (at the time the order was given) was there any-

thing said about whether the printed order had been changed or would be change to make it six days?

A. It had.

Q. What was said and who said it, about that?

A. The order read three days.

Q. Who said that?

A. Aller did, he said the order—I had three days, he wanted to know if I thought I was satisfied with that, and I wanted at least six days' trial; that is what I had on all other machines and he said it was already put in, and he wrote in the figure "6" and marked the three days,—that is in the printing, crossed that out, and wrote in six days.

And on his cross-examination defendant testified:

Q. You said you read the order when you signed it?

A. Which order?

Q. The order for the new rig?

A. Yes, they read it to me.

Q. Aller read it to you?

A. He read the whole thing through to me.

Q. Then you signed it?

A. Yes.

Q. And you gave it to Aller?

A. I don't know who took it, I judge Aller or Peterson took it, it laid on the table and they were both sitting around there.

Q. And you say Aller took the order and with a pencil changed it from three days' trial to a six-day trial, is that right, before you signed it?

A. *Yes, he changed it from three days to a trial of six days,* but I won't say with a pencil.

Q. But you signed it?

A. Yes.

This testimony was not controverted by anyone, and in his motion for judgment made at the close of all the testimony, plaintiff's counsel recognized the correctness of this testimony, and apparently conceded that the order was, as a matter of fact, changed as testified to by the defendant. In his motion defendant's counsel said "that it appears in

evidence that the machinery in controversy was purchased by defendant from the plaintiff pursuant to the terms of a written contract, providing, among other things, *that if after six days' trial of the engine* in such work as defendant might elect, such engine should develop 30 H. P. etc."

There is nothing to indicate that any fraud was practised upon the defendant. In fact his own testimony negatives, rather than affirms, the assertions of fraud and misrepresentations. A careful consideration of the evidence convinces us that Allen changed the contract so as to provide for a six, instead of a three, day trial period before it was signed by the defendant. Consequently the charge of fraud is unfounded.

It is also asserted that the order did not exclude implied warranties, and that, therefore, defendant might recover for breach of such implied warranties. The warranties set forth in the answer largely follow the express warranties in the contract, and defendant in his answer relied upon express, rather than implied, warranties. The evidence shows, and the trial court found, "that said plaintiff duly replaced all parts found defective within one year of the purchase of said engine on account of inferior material or workmanship, . . . transportation charges prepaid thereon according to the terms and conditions of said contract, and that the said plaintiff has complied in all respects with the conditions of said contract. . . . That no warranties . . . were given upon said engine or upon the sale or delivery thereof on the part of plaintiff or any of its agents or representatives except the regular written express warranty contained in the contract of purchase. That the said defendant, Stenger, is an intelligent man, is well versed in the English language, and is capable of writing and understanding the same, and that said defendant, Stenger, well knew the terms and conditions of the written contract for the purchase of said engine at the time of the execution and delivery thereof on his part." It will be noted that the contract of purchase expressly provides: "It is mutually agreed that said engine, fixtures, and equipment are purchased upon the following warranty *only*." Courts have no right to make contracts for the parties, but can only enforce the contracts which the parties themselves have made. There can be no serious doubt as to the intention of the parties with respect to warranties. The alleged implied

warranties now sought to be asserted are excluded by the express warranties on the same subject. Dowagiac Mfg. Co. v. Mahon, 13 N. D. 516, 101 N. W. 903; 35 Cyc. 390, 392; see also Hooven & A. Co. v. Wirtz, 15 N. D. 477, 107 N. W. 1078; Sorg v. Brost, 29 N. D. 124, 127, 150 N. W. 455; Comptograph Co. v. Citizens' Bank, 32 N. D. 59, 155 N. W. 680.

The judgment appealed from must be affirmed. It is so ordered.