COMPTOGRAPH COMPANY, a Corporation, v. CITIZENS BANK OF MINOT, a Corporation.

(155 N. W. 680.)

**Trial court — findings of — evidence — supported by.**

1. Evidence examined, and it is *held* that the trial court's findings are not contrary to, or unsupported by, the evidence.

**Contract — change or modification of — action — based upon — proof — burden of.**

2. A party who bases his cause of action upon a modification or change in a contract has the burden of establishing such fact.

**Express contract — suit upon — implied contract — no recovery on.**

3. Where plaintiff sues upon an express contract, he will not be permitted to recover on an implied contract.

Opinion filed November 16, 1915.

Appeal from a judgment of the District Court of Ward County, *Leighton,* J.

Plaintiff appeals.

Affirmed.

*Garnett & Garnett (Cowan & Adamson* and *H. S. Blood,* of counsel), for appellant.

The written contract contains the whole agreement of the parties. It so expressly provides. A warranty is an agreement. To hold that the statutory warranties apply to this sale would in effect create a new contract for the parties. Dowagiac Mfg. Co. v. Mahon, 13 N. D. 521, 101 N. W. 903.

There is no proof that plaintiff failed in any respect to carry out the contract. "Title passes to vendee when parties agree upon a present

transfer and the thing itself is identified." N. D. Stat. § 4990; Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136; Witte Mfg. Co. v. Reilly, 11 N. D. 203, 91 N. W. 42.

Even if the statutory warranties applied, there is no proof that any of them operated or were intended to operate as a condition. N. D. Stat. § 5435; Hull v. Caldwell, 3 S. D. 451, 54 N. W. 100.

Defendant, by using the second or substituted machine, affirmed the contract. The substitution was made under the contract. Fred W. Wolf Co. v. Monarch Refrigerator Co. 252 Ill. 491, 50 L.R.A.(N.S.) 808, 96 N. E. 1063; J. L. Owens Co. v. Doughty, 16 N. D. 13, 110 N. W. 78; International Soc. v. Hildreth, 11 N. D. 262, 91 N. W. 70.

If defendant ever had a right to rescind, it did not do so within a reasonable time. J. L. Owens Co. v. Doughty, 16 N. D. 10, 110 N. W. 78; Houghton Implement Co. v. Doughty, 14 N. D. 331, 104 N. W. 516; Bruce v. Davenport, 5 Abb. Pr. N. S. 185; Knuckolls v. Lea, 10 Humph. 577; Prickett v. McFadden, 8 Ill. App. 197; Wilson v. Fisher, 5 Houst. (Del.) 395; Foster v. Rowley, 110 Mich. 63, 67 N. W. 1077; Rosenfield v. Swenson, 45 Minn. 190, 47 N. W. 718; Houston v. Cook, 153 Pa. 43, 25 Atl. 622.

There was no unconditional rescission. Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558.

*Thompson & Wooledge,* for respondent.

There was no contract as to the second machine. Defendant had no opportunity before the second machine arrived to inspect it, and the rule is that the use of a machine for purposes of inspection is not an acceptance. Noble v. Olympia Brew. Co. 64 Wash. 461, 36 L.R.A. (N.S.) 467, 117 Pac. 241; Gay Oil Co. v. Roach, 93 Ark. 454, 27 L.R.A.(N.S.) 914, 137 Am. St. Rep. 95, 125 S. W. 122; 35 Cyc. 433, 434, 439, 440.

There was no executed sale, and defendant rescinded. Comp. Laws 1913, § 5994; Hooven & A. Co. v. Wirtz Bros. 15 N. D. 477, 107 N. W. 1078; Gay Oil Co. v. Roach, 27 L.R.A.(N.S.) 914, note; Noble v. Olympia Brew. Co. 36 L.R.A.(N.S.) 467, note; 35 Cyc. 440.

There was no waiver of warranties. 35 Cyc. 433, 439; Merchan's' & M. Sav. Bank v. Fraze, 9 Ind. App. 161, 53 Am. St. Rep. 341, 36 N. E. 378; Westby v. J. I. Case Threshing Mach. Co. 21 N. D. 575,

132 N. W. 137; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024.

Delivery was conditional, and no title passed,—no completed sale. Colean Mfg. Co. v. Blanchett, 16 N. D. 341, 113 N. W. 614; Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136.

CHRISTIANSON, J.   Plaintiff brought this action to recover the purchase price of an adding machine which it is alleged defendant purchased from plaintiff.   The material allegations of the complaint, aside from the allegation of corporate existence of the parties, are as follows:   "That on or about the 21st day of November, 1910, the defendant purchased from the plaintiff a certain comptograph, complete with motor and stand, for the sum of four hundred sixty-seven and 20/100 ($467.20) dollars, under and by virtue of the agreement, hereunto attached marked exhibit 'A' and made a part hereof.

"That thereafter, and on or about the 10th day of March, 1911, the said comptograph was returned to the plaintiff and another machine substituted in its place, in accordance with the terms of the said written agreement, which said comptograph so substituted was received and accepted by the defendant.

"That under the terms of said agreement the defendant was to pay the sum of four hundred sixty-seven and 20/100 ($467.20) dollars, no part of which has been paid by defendant to plaintiff, except the sum of sixty-seven and 20/100 ($67.20) dollars."

The defendant's answer admits the corporate existence of the parties, but denies all other matters in the complaint; and further asserts that the defendant purchased the adding machine under a written agreement in words and figures as follows:

Comptograph Company
Chicago, Ill.

The undersigned hereby orders from you, upon the conditions hereinafter stated, comptograph described as follows:—Comptograph now in our possession, which is hereby accepted, No. —— Model 3 A Pattern 16 Complete with motor and stand—Sixty seven no/100 dollars Paid on this contract ————.

Purchase price to be Four hundred sixty seven no/100 dollars.

Terms: Net Cash in sixty (60) days. Net will be allowed for payment in full of invoice within ten (10) days of date thereof.

The Comptograph Company hereby agrees to keep comptograph covered by this agreement in complete repair, under ordinary usage, for the term of one year from date of invoice.

This guaranty does not contemplate that the Comptograph Company is to pay express charges on the machine if sent in for repairs.

Upon the refusal or neglect of purchaser to pay any sum due under this contract when the same may be due and payable, the entire purchase price, less any actual cash payment thereon, shall then and there become due and payable, and said purchase price shall thereupon be considered due and payable to Comptograph Company as liquidated damages for and on account of the breach of this contract by the purchaser.

It is expressly agreed that this contract shall not be canceled, and that it covers all agreements between the parties hereto relative to this transaction, and that neither party shall be bound by any representation or promise made verbally by any person, and which is not herein embodied and set forth.

Dated at Minot, N. D., this 21 day of Nov. 1910.

Citizens Bank of Minot,

H. H. Kemper, Pres.,

Purchaser.

On this 21 day of Nov., 1910, Comptograph Company hereby accepts and becomes a party to the above agreement and contract of sale.

Louis F. Dow & Co.

Comptograph Company

By I. I. Cherry,

Its Agent.

The answer further alleges that the defendant thereafter endeavored to use said adding machine in good faith, but that the same was defective and would not work, but would become locked, and that after making many attempts to use said machine, the defendant notified the plaintiff many times of the defects therein. That the machine at the time of its purchase and delivery had latent defects which had not been disclosed

to the defendant by plaintiff or by any person; such defects arising from the process of manufacturing; and that such latent defects were not discovered until after delivery and purchase of the machine; that the machine was manufactured by the plaintiff, and that it had been ordered and purchased for a particular purpose, to wit, for the purpose of an adding machine, and that it was not reasonably fit for such purpose and would not perform the purpose for which it was intended, all of which was unknown to the defendant at the time of the delivery and purchase. That the defendant gave the machine only ordinary usage, but that it would not work and became out of repair, and that defendant immediately notified plaintiff of such fact, but that plaintiff failed and neglected to keep said machine in repair as provided in the contract, for a period of one year, or for any length of time whatever. That thereafter, and on or about March 21, 1911, the plaintiff at his own instance, and without any request on the part of the defendant, forwarded to defendant another adding machine, and that said second machine was received by the defendant merely for examination and never accepted, and that defendant never ordered or requested plaintiff to forward or deliver the second machine. But that on attempting to use the second machine it was found that the same would not work and was not reasonably fit for the purpose of an adding machine, but had the same defects as the first machine, of which fact the plaintiff was notified; that the second machine was received about March 25, 1911, and returned July 17, 1911; that the first machine was returned about April 6, 1911, that both machines were returned in as good condition as they were received.

The cause was tried to the court without a jury, and the trial court made findings in favor of the defendant, and judgment was entered pursuant to such findings, and this appeal is from the judgment entered in favor of the defendant upon such findings. The only errors argued by appellant on this appeal, and, hence, the only ones which will be considered, are the assignments which challenge the correctness of certain findings, as well as the conclusions of law drawn by the court from the facts found. The evidence shows that about six or ten days prior to November 21, 1911, one Cherry, a representative of the Louis F. Dow Company, the agent of the plaintiff in this action, left an adding machine with the defendant bank. Afterwards on November 21,

1911, he again called and the written order or agreement set forth in defendant's answer was executed.   The machine furnished did not prove satisfactory, and the defendant refused to pay for it.   And sometime prior to March 25, 1911 (the record does not disclose the exact date), Mr. Cherry again called on the defendant, and at that time requested that the machine furnished and purchased under the written agreement be returned to the plaintiff.   He also at that time suggested that he would send another machine.

Mr. Kemper, the president of the bank, in his testimony gives the following version of the conversation had at this time:—

Q. Did you ever order the second machine?

A. I did not.

Q. Now, Mr. Kemper, shortly before this first machine was returned, had Mr. Cherry been there at the bank?

A. He had, I think.

Q. Did you tell him what was the trouble with the first machine?

A. I did.

Q. And did he tell you to send the first machine in?

A. He did.

Q. And you sent it back?

A. Yes, sir.

Q. And to refresh your recollection I hand you memorandum and ask you—do you know about the date you sent in that first machine?

A. I can't give the exact date.

Q. I will hand you a memorandum marked exhibit "T", and ask you if, from that memorandum, you can state the date you shipped the first machine?

A. April 6, 1911.

Q. And it was forwarded by express?

A. It was.

Mr. Blood:   I admit we got it Mr. Wooledge.

Q. And the machine was shipped at the Comptograph Company's request, or Mr. Cherry's?

A. It was.

Q. Did you tell Mr. Cherry to have a second machine forwarded?

A. No, sir.

Q. What did you tell him as to any other machine?

A. I told him I didn't think it would be necessary, didn't think the machine would give satisfaction.

Q. You wanted to be through with it?

A. We liked the comptograph machine better than the Burroughs, but it wouldn't do the work.

Q. When this second comptograph machine arrived, were you surprised to see it come?

A. In a way I was.

Q. What made you surprised?

A. Well, I didn't think they would have the nerve to send another one out.

Q. What was Mr. Cherry's conversation concerning the sending of a second machine to the bank, give it?

A. That we liked the comptograph machine, that it had features the Burroughs didn't have, but it wouldn't do the work, we were impressed favorably with the comptograph, but it wouldn't do the work, and he wanted to send another machine, and I said, "It is useless, we have to have a machine that we can use, we can't have a machine locked up every day, every two or three days," we didn't authorize—

I move that "authorize" be stricken out.

A. He said he would send us another machine, do that at his own risk but we felt it wouldn't give satisfaction.

Q. When the machine came it was boxed up, was it not?

A. It was.

Q. The reason you were surprised when the machine came, the second machine, was because Mr. Cherry had insisted upon sending you one?

Q. What was the reason?

A. I didn't think he would send me a machine. I felt it was all satisfactory when the—we proved the machine wouldn't do the work.

The testimony shows that some days after this conversation took place, the second machine arrived and was delivered at the bank by the express company. The first machine was immediately returned to, and accepted by, the plaintiff. The defendant submitted the second machine to trial for four or five days in all, and found the same defects

therein which existed in the first machine. Cherry, the sales agent, made his headquarters at Minot, where the defendant bank is situated, and came to the bank frequently,—every two or three weeks,—and would then look the machine over. This is true both as to the first and the second machine. The testimony, also, shows that complaint was made to Cherry the first time he called at the bank after trouble occurred during the trial of the second machine, and that he was then informed of the defect in the second machine. Mr. Kurth, the assistant cashier, who testified to this, says, however, that he cannot give the exact date, but that it might have been a week or even two weeks after the trouble occurred. The record does show, however, that on May 1, 1911, the defendant, in replying to a letter received from the Louis F. Dow Company regarding payment for the machine, wrote the Louis F. Dow Company, stating among other things: "We are experiencing the same trouble with this machine which we did with the other. We have, therefore, set it aside and quit using it. The machine is left here in the office at your disposal. Please advise what you want us to do." On May 9, 1911, the Louis F. Dow Company wrote defendant to the effect that it had turned the matter over to the plaintiff, and that the plaintiff had agreed to take the matter up direct with the defendant in consideration of the Dow Company relinquishing its claim for profits on the sale. And subsequently, about May 15, 1911, two representatives of the plaintiff called at the defendant bank to try to adjust the trouble.

Mr. Kurth, the assistant cashier, who had charge of the trial of the second machine, and largely conducted the negotiations with the two representatives, testified as follows in regard to what took place at this time:

Q. Now in regard to the second machine, you were there at the bank when it arrived?

A. Yes, sir.

Q. Now, did you have anything to do with unpacking the second machine?

A. I was there when it was unpacked.

Q. Did you use the second machine?

A. Yes, sir.

Q. How much did you use it?

A. Used it about five or six days.

Q. Then what happened?

A. It was locked up.

Q. When it was locked up it wouldn't work—you had to stop and use some other machine?

A. Couldn't use it.

Q. That would happen in the midst of the day's business?

A. Yes, sir.

Q. And you would have to start over again on another machine to make out your daily balance?

A. Yes, sir.

Q. Did that happen more than once?

A. I think it happened twice on that last one.

Q. On the regular daily work?

A. Yes, sir.

Q. Did you try to use it more than that on other work?

A. That was set aside when it locked up the second time.

Q. Did you pack it up?

A. Yes, sir.

Q. Now, were you present when a fellow came here from the East to examine that machine, the one that was supposed to be apart?

A. I know there was one.

Q. Where was the machine when that man came?

A. In the crate.

Q. That man was a stranger to you?

A. Yes, sir.

Q. What did he do?

A. He set it up again.

Q. And after he set it up, what did he do?

A. He wanted us to use it.

Q. And what—after he set it up did he pack the machine up again?

A. No.

Q. Did you tell him to?

A. Yes, sir.

Q. What did you tell him?

A. We told him we had the same trouble with the second machine

we had with the first one after it locked up the second time it was packed up while it was locked.

Q. Did you tell him to take the machine away?

A. I told him the machine was there at his disposal, we didn't want it.

Q. Did you tell him that you had packed it up once and didn't want to pack it up again?

A. Yes, sir.

Q. State what you did tell him?

A. We told him that we had used the first machine, and we found we had trouble, and we found the second machine with the same trouble as the first one they shipped, and that we had it packed up and ready to ship, but the company failed to tell us where they wanted it shipped, or when, and told them it was not necessary to take this machine out of the crate again because we weren't going to use it.

Q. Now you say with reference to this machine which arrived at the bank, the second machine, on or about March 21, 1911, you say you used it for five or six days, you mean you used it the first five or six days, you used it after it got locked up?

A. No.

Q. What do you mean?

A. We used it four or five days.

Q. Did it lock up?

A. Yes, sir.

The representatives of the plaintiff, however, went away leaving the machine at the bank. Some further correspondence was had, in none of which, however, did the defendant recede from its refusal to keep the second machine, and on June 17, 1911, the defendant returned the machine by express, without, however, prepaying express charges.

In order to avoid misunderstanding as to the facts, it may be stated that Cherry did not testify. It may also be stated that the undisputed evidence shows that the defendant never made any payment, but that the partial payment of $67.20, set forth in the complaint, was merely a special discount made by Cherry at the time the first machine was ordered.

Appellant's entire argument is predicated on the theory that the rights

of the parties are fixed by the written contract, dated November 21, 1910; that this contract contained the entire agreement between the parties and excluded all implied warranties. The latter contention seems contrary to the rule announced by this court in Hooven & A. Co. v. Wirtz Bros. 15 N. D. 477, 107 N. W. 1078, wherein it was said: "There is no conflict between the order and the implied warranties. The order does not state that the sale is made without warranties, neither does it state that the vender warrants only against certain defects, thus excluding all other warranties, whether express or implied, as was the case in Dowagiac Mfg. Co. v. Mahon, 13 N. D. 516, 101 N. W. 903. The order is silent on the subject of warranties, save that it provides in effect that express warranties will not be recognized unless approved by the plaintiff in writing. The warranties which are thus prohibited by the written order are warranties by agreement, by contract, verbal or written, or express warranties. The prohibition does not extend to implied warranties which are not matters of agreement, but arise by operation of law. 'They are obligations which the law raises upon principles foreign to the actual contract. . . .' They are such as were implied at common law in case of sales under the circumstances stated in the statutes above quoted, and do not depend upon the agreement of the seller. Hoe v. Sanborn, 21 N. Y. 563, 78 Am. Dec. 163; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 114, 28 L. ed. 86, 88, 3 Sup. Ct. Rep. 537. The order contains no provisions excluding such warranties, and the defendants were clearly entitled to rely upon them." See also Sorg v. Brost, 29 N. D. 124, 127, 150 N. W. 455.

The conclusions we have reached in this matter, however, make it unnecessary for us to consider or determine what judgment should have been entered, or what the rights of the respective parties might have been, if such rights were fixed by the written contract.

This is not a case triable de novo in this court, but a case properly triable to a jury; the findings of the trial court stand in place of, and have the same effect as, special findings of a jury. The trial court found that the defendant "on April 6, 1911, at the request of said plaintiff, returned the said comptograph to said plaintiff, and the said plaintiff received the same in as good condition as when delivered to the defendant. That the said written contract between the parties then

and there was rescinded and terminated by mutual consent, and the said comptograph so returned by the defendant at plaintiff's request was received by the plaintiff and retained by plaintiff, and has never been returned to the defendant or offered to be returned." The trial court further found that the second machine was forwarded to the defendant against its consent, and that it refused to accept the same, and refused to consent to the substitution of the second machine under the written contract. These findings, in our opinion, have ample support in the evidence, and are therefore binding on this court.

. Under the written contract, plaintiff not only sold the adding machine described therein to the defendant, but also agreed to keep the same "in complete repair, under ordinary usage, for the term of one year, from date of invoice." This machine was found defective. It was repeatedly out of order. Under plaintiff's contract it was required to keep the machine in complete repair. The agent who sold it examined the machine frequently. Finally he decided that the plaintiff would take the machine back. So he entered into a new agreement with the defendant, under the terms of which the adding machine described in the written contract was returned to, and accepted by, defendant. Thus far there is no dispute as to the new agreement. Defendant contends that this was the entire agreement, and that the contractual relations between the parties terminated. Plaintiff, however, claims that this was not the whole of the new agreement, but that it was understood that the written contract remain in full force, and its provisions apply to a second adding machine to be furnished by defendant in lieu of the machine which had been returned. Both parties rely upon the new agreement. Plaintiff not only accepted and retained the first machine, but predicates its cause of action upon the delivery of the second machine under the new agreement. Hence, it is obvious that no question is presented as to Cherry's authority to make the last agreement; it has been ratified by plaintiff, and it must recover thereunder if at all. Westby v. J. I. Case Threshing Mach. Co. 21 N. D. 575, 132 N. W. 137.

Plaintiff claimed that the written contract was not terminated, but remained in full force; and that the new agreement merely provided for a substitution of another adding machine under the original contract. Plaintiff had the burden of showing a right of recovery. This

included the burden of showing that the terms of the new or substituted agreement were such as plaintiff claimed. 9 Cyc. 761. The trial court found that this had not been proved, and that the agreement was as contended for by defendant. The finding is supported by the evidence and is binding upon this court.

Appellant also asserts that the defendant used the second machine for an unreasonable length of time, and thereby affirmed the contract of purchase. As we have already held, the rights of these parties are dependent, not upon the written contract, but upon the oral agreement under which the first machine was returned and the second machine sent out for trial. Under such oral agreement, no contract of purchase existed, but the second machine was sent on, not as a delivery under a contract of purchase, but for trial purposes only. Under these facts, any obligation on the part of the defendant to pay for the machine would arise by implication. As this suit is based upon an express contract, no recovery can be had herein upon an implied contract, even if the facts justified such recovery. Lowe v. Jensen, 22 N. D. 148, 132 N. W. 661; Yancey v. Boyce, 28 N. D. 187, 148 N. W. 539. The facts as found by the trial court, however, negative plaintiff's right to recover either upon express or implied contract.

The judgment of the trial court must be affirmed. It is so ordered.