MINNEAPOLIS STEEL & MACHINERY COMPANY, a Corporation, Appellant, v. CASEY LAND AGENCY, a Corporation, T. M. Casey and J. F. Casey, Respondents.

(201 N. W. 172.)

**Sales — seller, who knew buyer intended to use tractor for farming operations.**

1. Where a tractor is sold by the manufacturer to a buyer who, to the knowledge of the seller, intends to use it in farming operations, it is sold under an implied warranty of fitness for that purpose, pursuant to § 15, subdivision (1) of the Sales Act, unless the machine was sold under express warranties inconsistent therewith.

**Sales — whether buyer relies on seller's skill and judgment is question of fact, provable by direct or circumstantial evidence.**

2. Whether the buyer relies on the skill and judgment of the seller, within the meaning of subdivision (1) of § 15 of the Sales Act, is a question of fact and may be proved by direct or circumstantial evidence.

---

Note.—(1) Implied warranty of fitness on sale by manufacture for special purpose, see anno. 15 L.R.A. (N.S.) 855; 24 R. C. L. 192; 3 R. C. L. Supp. 1364; 4 R. C. L. Supp. 1531.

(4) Exclusion of implied warranty by express warranties, see 23 R. C. L. 1402; 4 R. C. L. Supp. 1523.

**Sales — buyer may rescind on breach of implied warranty of fitness, or may keep article and recoup damages in diminution or extinction of purchase price.**

3. In case of breach of the implied warranty of fitness for the purpose intended, the buyer may rescind and return the article, or he may keep it and recoup damages in diminution or extinction of the purchase price.

**Sales — express warranties held not to exclude implied warranty of fitness.**

4. The express warranties examined and held not to exclude the implied warranty of fitness.

**Sales — express warranties held not to provide exclusive remedy in case of breach of implied warranty of fitness.**

5. The express warranties examined, and, for reasons stated in the opinion, held not to provide an exclusive remedy in case of breach.

**Sales — "particular purpose", within provision of Sales Act as to implied warranty, defined.**

6. A "particular purpose," within the meaning of subsection (1), § 15, of the Sales Act, is not some purpose necessarily distinct from a general purpose; it is the purpose expressly or impliedly communicated to the seller for which the buyer buys the article.

**Sales — finding, that damages from breach of implied warranty of fitness equaled balance due on purchase price, sustained.**

7. For reasons stated in the opinion, it is held, that there is sufficient competent evidence to support a finding that the defendant purchaser suffered damages by reason of the breach of the implied warranty of fitness and that such damages equalled in amount the balance due on the purchase price.

Opinion filed July 26, 1924.   Rehearing denied December 4, 1924.

Sales, 35 Cyc. p. 392 n. 76; p. 399 n. 37; p. 434 n. 55; p. 442 n. 88; p. 464 n. 90; p. 466 n. 92.

Appeal from the District Court of McLean County, *Jansonius, J.* Affirmed.

*Lawrence, Murphy & Nilles,* for appellant.

The parties to a sale may by an express provision limit the right of the buyer, in case of a breach of warranty, to a return of the goods and recovery of the price.   24 R. C. L. p. 250.

Where the parties to a contract of sale have agreed on the warranties and the remedies that accrue on a breach of them, the remedies constitute the only relief afforded a party, and he must look to his con-

51 N. D.—53.

tract and be governed by its terms. Wisdom v. Nichols & S. Co. 139 Ky. 506, 97 S. W. 18; Scott v. Vulcan Iron Works Co. 31 Okla. 334, 122 Pac. 186; Hope v. Peck, 132 Pac. 344, judgment vacated 38 Okla. 531, 134 Pac. 33.

It is competent for parties to contract what course shall be pursued in case of a breach of warranty, and when conditions are required to be performed by the buyer, as part of the contract, in case of such breach, the buyer must comply with such conditions before he can claim damages by reason of such breach. James v. Bekkedahl, 10 N. D. 120, 86 N. W. 226.

A failure to comply with a stipulation providing for giving written notice of the failure of a machine to work as warranted defeats the rights of the purchaser to defend an action for the purchase price, on the ground that there was a breach of the warranty where such stipulation was a condition precedent to any liability on the warranty. 16 N. D. 585.

An implied warranty can never be availed of unless the seller is advised of the particular purpose for which the machine is purchased. 35 Cyc. 399, § 15 (1).

*Hyland & Foster,* for respondent.

An express warranty or condition does not negative a warranty or a condition implied under the sales act, unless inconsistent therewith. Hooven & A. Co. v. Wirtz, 15 N. D. 482, 107 N. W. 1078.

JOHNSON, J. Plaintiff commenced an action in the District Court of McLean County to foreclose a chattel mortgage upon a tractor and certain attachments. The plaintiff had sold the tractor to the defendant, The Casey Land Co., in 1919, and notes were given for the purchase price, secured by the mortgage upon the tractor. The other defendants are sureties on the notes. After hearing the testimony the court made findings of fact, conclusions of law, and ordered a judgment in favor of the defendants for a dismissal of the action. From the judgment entered, pursuant to the order, this appeal is taken.

The complaint is in the usual form. It recites the execution of the notes and the chattel mortgage, the nonpayment of the notes, and asks for the customary relief. The answer admits the execution of the notes but alleges, in substance, that they were executed as and for the pur-

chase price of the tractor covered by the mortgage; that the tractor was sold under warranties; that there was a breach of warranty with resulting damage to the defendants; the defendants then seek to recoup in this action the damages alleged to have been suffered by reason of the breach of the warranties. At the opening of the trial the defendants stated in effect that their theory was both a counterclaim and recoupment for damages under the statute. The case was tried upon the theory of recoupment of damages. The answer alleged that certain payments had been made upon notes, found by the trial court to have totalled $3,333.18, with a large balance due thereon; the defendants then allege and the testimony tends to show that the tractor was in fact worth no more than they had already paid on the notes.

The defendant Casey Land Co., a corporation, purchased from the plaintiff some time in 1919 a 40–60 tractor, which was subsequently and some time in July, 1919, exchanged for a 60–90 tractor. One of defendant's witnesses says the small tractor was not satisfactory. The second tractor—the one in suit—was supposed to develop 20 more horse power than the first. The other defendants, T. M. and J. F. Casey, signed the notes as sureties. The last tractor, which is the one covered by the mortgage, was purchased upon an order which contained several express warranties which will be hereafter more fully set forth. The trial court found that the plaintiff manufactured the tractor in Minneapolis. The machine was operated for three days in August, 1919, in light discing operations, whereupon it was put away until the spring of 1920. While the machine was being operated for this short period, in 1919, a man recommended by the plaintiff vendor, but paid by defendant, operated the machine. To pull the discs required about 20 horsepower. They did not burn kerosene, although it was sold as an "oil tractor;" they used gasoline. It appears from the testimony that in the spring of 1920 defendant attempted to use kerosene, but the machine did not work with kerosene for fuel; they used gasoline all through the season. The tractor was used about 28 or 30 days in the spring of 1920 and at the end of every three or four days all work had to stop in order to clean the gear case of dirt which accumulated, entered the gears and made it impossible to operate the machine. It is contended by the defendant that through defective and improper construction this dirt accumulated in vital parts of the machine, clogging

and rendering the same practically useless. It appears from the testimony of the defendant's witnesses that the gears were not sufficiently heavy; that as a general rule "these power machines have gears in proportion to their power;" and there was not enough wearing surface, "they wore out so quickly;" that the gears used in the tractor in suit were of the same size and strength as those used in the smaller tractor for which it was exchanged, although the former developed 20 more horse power. Such, in general, is the testimony of defendant's expert witness, Wickum, who had had experience with tractors and gas engines since 1899. Another witness testified to the effect that the steel transmission gears were "rolled over" by reason of their lightness in proportion to the power of the motor or engine. The gas consumption was heavy, costing $2.40, or more, per acre. It appears from the testimony that the defendant had trouble with the tractor during the 28 or 30 days it was in use in 1920. T. M. Casey, during the summer and fall of 1920, says he notified the plaintiff and its agent at Fargo of the alleged defects, advising the agent at Fargo that it did not pull twelve plows, that the gears stuck, that it wouldn't burn kerosene, and suggested that he would take two smaller tractors or engines in exchange because "it wouldn't do the farming for us." He had a conversation likewise with reference to the same matter, according to his testimony, with Messrs. Sivright & Olson in the Minneapolis office, but nothing further was done by the plaintiff, neither with respect to remedying the defects nor about exchanging smaller tractors for the one in suit. Defendant's witness Casey testifies that he made a payment of $1000 in 1920 upon the promise of the officers and agents of the plaintiff in Minneapolis to put the tractor in working condition, which he claims was not done. This is denied by plaintiff. There is no testimony or claim in behalf of plaintiff that any attempt was made to put the tractor into working condition thereafter. The witness Wickum, testifying for the defendant, explained the defect which permitted dirt to enter the gears, with the result that the operator had to stop work every three days to clean them out at considerable loss of time. He says, in substance, that it would have been quite simple to correct this matter when the engine was built, but that that portion of it would have to be practically rebuilt in order to cover effectually the opening that admitted the dirt and that this should be done in the shops. The infer-

ence from his testimony is that it is not altogether a simple matter, in view of the construction of the machine, to cover this opening adequately. After the difficulties in 1920 the tractor was put into a shed because "it would not do the farming," where it was at the time of the trial.

The court found that the plaintiff, at the time of the sale of the tractor in suit to the defendant company, knew that the defendant intended to use the oil burning tractor for the purpose of plowing, discing, and breaking sod, in order to prepare the land for crops; that the tractor was manufactured by the plaintiff and that it was not fit for the purpose of plowing, discing, or breaking sod or doing other general farm work; that it was of faulty construction and inferior material and built in such a manner that some parts were too light and of insufficient strength to withstand ordinary and reasonable use; that the tractor could not be operated with kerosene as fuel and that it would operate with gasoline only. The court found that the tractor was unfit and unsuitable for the purpose for which it was sold to defendant. The court expressly found that the differential gears were too weak to withstand the strain to which they were subjected in the ordinary operation of plowing and breaking sod in the usual manner; that the gears were so exposed to dirt and dust as to cause the latter to accumulate therein with the result that the tractor could not be operated; that the bull pinions were of faulty construction and of inferior material and too light to withstand ordinary use. The court also found that the main pinion drive was of faulty construction, inferior material and too light to withstand ordinary use. From the foregoing findings the court ordered judgment entered dismissing the action.

It is the contention of the defendant that the tractor was sold with an implied warranty of quality and fitness, pursuant to § 15, subsection (1) of the Sales Act; that such warranty arises by operation of law, outside the contract of the parties. Defendant contends that there is nothing in the express warranties that excludes the implied warranty of fitness for the purpose for which the machine was intended to be used. The defendant then contends that it has the right, under the Sales Act, to recoup damages which it claims resulted from a breach of the implied warranty. If the defendant has proved a breach of an implied warranty and damages resulting therefrom in an amount equal

to that of the balance due on the note in suit, it would seem that the plaintiff is not entitled to recover. Section 69 (a) Sales Act; Session Laws 1917, chap. 202; Borden v. Fine, 212 Mass. 425, 98 N. E. 1073. The defendant relies upon this statute. He did not rescind or return the tractor, but has elected to keep it and recoup the damages. See also Tiedeman v. Rasmussen, 50 N. D. 966, 198 N. W. 550.

The tractor was sold upon an order describing the machine as a "60–90 oil tractor" and which contained the following warranties:

"The Company WARRANTS the Machinery for ONE YEAR to be well made of good material and durable if used with proper care. If within one year from date of shipment of the said machinery, any part shall fail by reason of defective material or workmanship, the Minneapolis Steel & Machinery Company will furnish a new part free of charge f. o. b. factory provided the broken part is delivered to the factory of the said Company, transportation prepaid, with satisfactory evidence that its failure was due to defective material and workmanship.

"The tractor is further warranted to develop its full rated horse power when properly operated under favorable conditions.

"If upon three days' trial after the said machine is first started, with proper care and under favorable conditions, it fails to work, the purchaser shall immediately give notice by registered mail or wire to the seller at its office in Minneapolis, Minnesota, and to the agent through whom it was purchased, stating wherein the machine fails, and shall allow a reasonable time for a competent man to be sent to put it in good order, and the purchaser shall render necessary and friendly assistance to operate it. If the machine cannot then be made to work under ordinary conditions, the purchaser shall immediately return it to said agent in as good order as when received (except for ordinary wear). The Company will either furnish another machine with the same above warranty or (at its option) all cash and notes paid on the purchase price shall be forthwith refunded to the purchaser, which shall constitute a settlement in full of the transaction, and operate as a release of all claims of both buyer and seller, arising out of this contract. Failure to give notice within the three days specified shall operate as an acceptance of said machine and a complete fulfillment of this warranty. . . . .

"This instrument comprises the entire contract between the parties

hereto, and any verbal representations and agreements outside of, or contradictory to, the foregoing terms and warranty are hereby agreed to be void for all purposes whatsoever."

Section 15, Subdivision (1) of the Sales Act chapter 202, Session Laws, 1917, reads as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods applied under a contract to sell or a sale except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

Subdivision (6) of § 15 of the Sales Act, chapter 202, Session Laws, 1917:

"(6) An express warranty of condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

Section 69, subdivision (a) of the Sales Act, with respect to the remedy of the buyer for breach of warranty, reads as follows:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election—

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price."

It has been held that subdivision (1) of section 15 substantially enacts the common law rule with reference to implied warranty of fitness. Kansas City Bolt & Nut Co. v. Rodd, 136 C. C. A. 356, 220 Fed. 750. See Ward v. Valker, 44 N. D. 598, 176 N. W. 129; Rinaldi v. Mohican Co. 225 N. Y. 70, 121 N. E. 471, 18 N. C. C. A. 1058, and Markman v. Hallbeck, 206 Ill. App. 465.

There is no language in the warranty quoted above that excludes, expressly or by necessary implication, the warranties that arise by operation of law, as provided by § 15, supra.

The "particular purpose" for which the tractor was purchased was for use in connection with general farm work, discing, plowing, etc. "A 'particular purpose' is not some purpose necessarily distinct from a

general purpose; . . . A particular purpose is, in fact, the purpose expressly or impliedly communicated to the seller, for which the buyer buys the goods; and it may appear from the very description of the article, as, for example, 'coatings,' or a 'hot water bottle.' " Benjamin, Sales, 5th ed. pp. 625, 626. (Quoted with approval in Williston on Sales, p. 336).

While it is not expressly stated by any witness that the defendant relied upon the skill or judgment of the plaintiff, the inference that such was the fact irresistibly arises from all the circumstances. The tractor was manufactured by plaintiff for use in farming operations; the defendant operated large farms in McLean county. There is, of course, no possible doubt but that the plaintiff knew that the tractor was to be used in such farming operations as discing, plowing, and the like. The conclusion necessarily follows that the defendant, in purchasing this tractor, for the purpose intended, relied upon the skill and judgment of the seller. Any other construction of § 15, subdivision (1) would seem wholly illogical. Whether the buyer relies on the skill and judgment of the seller is a question of fact to be proved by him on whom the burden rests like any other fact. The buyer may say to the seller: "I shall rely on your skill and judgment in purchasing this article;" he may have used no words of that or similar import, but the fact of reliance may, notwithstanding, be quite as clearly established by circumstantial proof. Ward v. Great Atlantic & P. Tea Co. 231 Mass. 90, 5 A.L.R. 242, 120 N. E. 225.

The warranty provision of the contract quoted above naturally falls into three divisions. The first warranty is separate and distinct from the subsequent warranties. It warrants the machinery for one year, to be well made, of good material, and durable. Then follows the provision that parts that fail by reason of defective material or workmanship will be replaced free of charge during the year following the sale. We think these provisions should be construed together as constituting an undertaking on the part of the seller to replace parts that break or wear out by reason of defective materials or warkmanship. It seems plain that subsequent provisions as to notice, etc. have no application to this warranty. Then follows the warranty that the tractor will develop its full rated horse power; and then the third warranty, which is wholly separate and distinct and has a purpose different from that

of the warranty provisions preceding it. This warranty has particular reference to the machine as a functioning whole. It is provided that if the machine does not work after three days' trial the purchaser shall immediately give notice to the seller and the seller then has a reasonable time in which to put the machine into working order, and if he does not succeed, he may, at his option, replace the machine sold with a new one or take the machine and return the notes and the consideration. It is then provided that if notice be not given within three days the buyer shall be deemed to have accepted the machine. These conditions have no application to the other warranties. See Lindsay v. Fricke, 130 Wis. 107, 109 N. W. 945.

The last paragraph of the warranty quoted above is not in terms exclusive. There is no provision that these warranties are exclusive of implied warranties or that they are the only warranties. The stipulation is that they comprise the entire contract between the parties. Inasmuch as the warranties implied by law arise independently and outside of the contract, this provision does not exclude implied warranties. Hooven & A. Co. v. Wirtz, 15 N. D. 477, 482, 107 N. W. 1078; and see Comptograph Co. v. Citizens Bank, 32 N. D. 59, 69, 155 N. W. 680, and cases therein cited.

Plaintiff contends that the contract provides an exclusive remedy in case of breach of warranty, namely, rescission and a return of the machinery and that under such a contract a counterclaim for damages for breach of warranty cannot be maintained. The numerous authorities cited by counsel sustain the proposition that if the contract in fact does provide an exclusive remedy in case of breach of warranty, other remedies are not open to the buyer. A correct analysis of the warranty, which we have set out in full, discloses that it is not exclusive of implied warranties; nor does it in any way define or restrict the remedy for breach of implied warranties; and the buyer may elect, under subdivision (a) § 69, of the Sales Act, one of two remedies. He has elected to recoup the damages caused by the breach in extinction of the purchase price.

It is likewise urged by appellant that notice of the defect must be given. As pointed out heretofore, the requirement of notice by wire or letter has reference to the express, not to the implied, warranties. The testimony moreover shows that notice of the breach of the implied

warranty was given within a reasonable time after defendants discovered the defects.

It is strenuously contended by the appellant that there is no competent proof of damages. We have set out the evidence somewhat fully upon the condition of the tractor and the manner in which it worked. The proof conclusively shows that it would not burn kerosene and that gasoline had to be used at a cost of about $2.40 per acre; that operations had to be stopped, because of faulty construction, every three or four days to clean the gears, at considerable loss of time; that the gears were not strong enough in view of the power of the engine; and that other parts of the machine for the same reason wore out much more rapidly than ordinarily should have been the case. This lack of durability in the gears does not appear to have been due to any defect in their structure, rather to the lack of proper balance or proportion among the various parts of the tractor in view of its power. It appears also that the tractor has not been used, because of its unfitness for the purpose for which it was purchased, since the season of 1920. We think there is ample evidence to sustain the allegation of damages and that the findings of the trial court in this regard are correct and must be sustained.

The judgment of the trial court is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.