This action was brought to foreclose a chattel mortgage given to secure $1,925, the purchase price of certain threshing machinery consisting of a separator, feeder, weigher, and wind stacker. The indebtedness was represented by two notes: One for $300 given for the stacker and one for $1,625 the balance of the purchase price. The stacker note was paid in 1921, and plaintiff seeks to satisfy the second note by this foreclosure.
The complaint is the ordinary complaint in foreclosure. The defendant, in his answer, admits the giving of the notes and mortgage and alleges that they were given for the purchase price of threshing machinery. That such machinery was sold under warranty; that the warranty failed and therefore there was failure of the consideration, and that he had rescinded the contract therefor. Defendant further counterclaimed for that part of the purchase price paid by him and for damages arising by reason of the breach of warranty. The plaintiff replying pleaded the terms of the written contract under which the sale was made, and the noncompliance with the same by the defendant in that he failed to give notice of the defects claimed; that he continued to retain and use the machinery after he became aware of such alleged defects, and that he did not return or offer to return the same. Trial was had to the court. The court found for the defendant, dismissed the foreclosure action and ordered judgment in defendant's favor on the counterclaim. Judgment was entered accordingly. Plaintiff appeals therefrom to this court and asks for a trial de novo. *Page 562 
The plaintiff is a Minnesota corporation engaged in the business of manufacturing and selling threshing machinery. Its general agent for the northern part of North Dakota was one Wood, whose office was at Grand Forks. The defendant is a farmer and business man residing at Devils Lake. In August, 1921, the defendant ordered the machinery in question by written order given to one Swingseth, a solicitor for the plaintiff. The order describing the machinery stipulated that the separator should be "fitted for 5 ton Holt power, speed 1050, with 12" pulley." The order, among others, contained the following provisions:
"The purchaser expressly agrees that this order is taken and given subject to approval and acceptance, or rejection, by the company at its home office at West Minneapolis, Hopkins, Minnesota, notice of which acceptance is hereby waived by the purchaser.
"If this order is accepted by the company, then it is mutually agreed between the purchaser and the company that each said machine, attachment or article is ordered, purchased and sold subject to and upon the following conditions and agreements and upon none others, either express or implied, than as follows to wit:
"1. It is agreed that no dealer, branch house manager, agent or any other employee or representative of the company (except an officer of the company, and then only in writing) has any power or authority to sell any machinery of the said company, except to take orders therefor upon this printed blank form, without erasure, interlineation or change of any of the printed conditions or agreements hereof and submitting the same to the company at West Minneapolis, Hopkins, Minnesota, for its approval and acceptance, or rejection, and that there are no representations, agreements, obligations or conditions express or implied, statutory or otherwise, relating to the subject matter hereof, other than herein contained; and that this agreement is the sole contract and comprises all agreements between the parties hereto with reference to said machinery.
"2. It is mutually agreed and understood by and between the parties hereto that this order and contract is separable and divisible and that the machinery is hereby ordered, purchased and sold, each at a separate and agreed fixed price which is included in the aggregate sum of all the machinery so ordered, purchased and sold, and that said machinery *Page 563 
is sold subject to the following express separate, special warranties and conditions hereinafter mentioned; all statutory or implied warranties except as to title are hereby expressly negatived and excluded.
"First. The said machinery is warranted to be in good working order at the time of delivery, and will well perform the work for which it is intended if properly used and operated.
"It is agreed that in case there should be any real or apparent failure of either of said machines, attachments, articles or component parts thereof, to fulfill the warranties aforesaid, the purchaser shall give written notice of the defect complained of, describing the same and stating when it was discovered, to the company at its said home office, by registered letter posted not more than seven days after such discovery, and in any event not more than ten days after it is first used by the purchaser, and the purchaser shall forthwith discontinue the use thereof, pending the remedy of such defect, and shall allow said company a reasonable time to send a man to remedy the defect, if any exists; the purchaser agrees to render friendly assistance to the Company and furnish adequate means for operating and testing the machinery, and in case the defect is in the machinery or any of its parts and the same is not remedied, the particular part, machine, attachment or article which fails to conform to the warranties aforesaid must be returned by the purchaser in as good order as when received, except for ordinary wear to the place where it was received, and the purchaser shall thereupon immediately notify the company of such return by registered letter addressed to its said home office, and the company may thereupon at its option either replace the same or it may elect to rescind this contract so far as such machine, attachment or article is concerned, and in case any machine, attachment or article is returned by the purchaser, and not replaced by the company, then the company shall return to the purchaser the moneys, notes and property given therefor or credit on his notes pro rata the agreed price of said machine, attachment, or article so returned, and no further claim shall be made upon the company.
"The continued use or possession of the machine, part or attachment after a period of ten days from the date it is first used or the use and possession thereof after an attempt has been made and completed to *Page 564 
remedy defects therein or the failure to give the notices herein required, as and within the time required, or to return the machine, part or attachment as herein provided, shall be deemed conclusive evidence that the warranty is fulfilled.
"Second. That all the machinery mentioned is warranted to be well made, of good material and durable with proper care, and the company agrees that if any separate distinct individual parts making up the whole part (except belts, hose, batteries, spark plugs, magnetos, coils oilers and oilpipes, which are not warranted), proves defective in consequence of a latent defect in the material or workmanship, at any time within six months after the date of delivery of the said machinery, and if such part is within seven months from such date of delivery returned to the company, at its factory or at its nearest branch house, freight prepaid, and if the same is found by the company, or its branch house manager to he defective, by reason of any such latent defects, it will be replaced free of charge except for the transportation charges. It is further agreed that a defect within the meaning of this warranty, in any part of the machine, attachment, or article, shall not, when such part is capable of being renewed, repaired or replaced, operate to condemn such machine, attachment or article.
"3. . . .
"4. It is agreed as a condition precedent to the warranties and agreements herein contained and of the acceptance of this order and delivery of the machinery, that in no event shall the company be subject to any other or further liability (except such as herein expressly given and only on the conditions stated) whether in tort, contract, or otherwise, arising or growing out or in connection with said machinery; or the operation thereof; or the procuring of the order; or for any act, omission or fault of any person on behalf of the company, either in starting, setting up, adjusting, operating or attempting to remedy any defect in the machinery or otherwise; and that no attempt by the company or any person on its behalf to remedy any defect in the machinery shall be deemed a waiver of any of the provisions, terms and conditions herein contained.
"5. . . .
"6. . . .
"7. . . . *Page 565 
"IN TESTIMONY WHEREOF, the purchaser has hereunto set his hand the day and date first above mentioned and acknowledges to have received a full, true and correct copy thereof, and agrees that no promises, representations, inducements, or agreements have been made to or with him in relation to the foregoing, or any part thereof, or in the subject matter hereof, except such as are hereinbefore in this printed form contained."
These provisions were printed in fine print on the lower half of the order sheet.
In due time the machinery was delivered. The defendant was operating a large farm in 1921. Over the objection of the plaintiff that it was inadmissible by reason of the written contract between the parties, defendant introduced testimony tending to show that though he signed the order in question he was unaware of its conditions, and particularly of the provisions hereinbefore set out. That he failed to read the contract on account of haste and professional work (dentistry) in which he was then engaged. That prior to entering into the contract for the purchase of the threshing machinery, he had bought a Holt 5 ton tractor and wanted to get a separator that could be operated with this power, and so advised Swingseth. That Swingseth represented to him that the machinery described in the order could be successfully operated by this tractor; that the defendant advised Swingseth of the threshing he had to do and Swingseth represented that the machinery purchased would do the work required to be done; that the separator was a grain saver. That defendant relied upon the representations thus made, and believing and relying upon them, signed the contract in question and accepted the machine when it was delivered to him. That in due season he endeavored to use the machine purchased in threshing his crop, the separator would not save the grain and did not give satisfaction, the Holt tractor was not powerful enough to pull it. That he verbally advised Swingseth and other representatives of the plaintiff of these facts and was assured by Swingseth and the others that the machine could be made to operate satisfactorily, and that the plaintiff company would see to it that it did so. That Swingseth and various other salesmen and other experts of the plaintiff endeavored to fix the machinery but were unable to do so. That defendant offered to return the same but was induced not to do so and to *Page 566 
continue its use by promises of the salesmen and experts that the defects would be remedied. Relying upon those promises and assurances he did not return the machinery but endeavored to use it. He was unable to complete his threshing with it and had to hire another machine wherewith to do so. That in December, 1921, he paid the stacker note of $300 upon the assurance of Swingseth that the company would fix the machine so that it would operate satisfactorily, and would not have done so had he not been so assured. In the fall of 1922, he again tried to operate the machine but found that it would not do the work. The salesmen and experts of the plaintiff again agreed to remedy the defects and make the machine work, and tried to do so, but it could not be done. Thereupon, the defendant again verbally notified the plaintiff's agents and salesmen that he would not keep the machine and that he would return it to such place as they might designate, but that they refused to accept a return thereof.
The plaintiff has assigned numerous errors which it here relies upon for a reversal. These assignments are based upon two propositions for which it strenuously contends. First, that the contract between the parties was in writing and therefore evidence of prior oral representations and warranties was inadmissible and, second, that since the contract was written, complete in itself, and provided for the remedies of the parties in case of breach of warranty, therefore, the terms in this respect must control and the defendant, even though there was a breach of warranty, was limited by such terms and could have no relief not contemplated and provided for in the contract.
What was the contract? The plaintiff insists that the provisions as contained in the order constituted a complete, valid and binding contract. The defendant denies this contention and is equally insistent that the circumstances under which the order was signed were such as render it inoperative as a contract, and that in any event its provisions were contrary to public policy and therefore void and unenforceable. His position is that the instrument was so drawn as to deceive the defendant and was intended so to do; that the provisions relied upon were in fine print and were not called to the attention of the defendant at the time he signed the order; that the defendant, when he signed it, did so inadvertently, without knowledge of the contents thereof and in the belief that the same embodied the representations and warranties *Page 567 
made orally to him by plaintiff's agent prior to the time that the order was signed; that the contract as so drawn and so used was invalid and void as being unfair, fraudulent, and contrary to public policy.
In the first place, there is no allegation of fraud in the pleadings, nor is there any contention made that there was any subterfuge resorted to to procure the defendant's signature to the order. It appears that the defendant is an experienced and well educated business man of large affairs. Nothing was done on the part of the salesman, Swingseth, to prevent him from reading the instrument. The circumstances existing at the time that defendant signed it were of his own creation. He had an opportunity to read it — at least nothing was done by Swingseth to induce him not to read it. He was given a duplicate which he retained. There were no representations that the contract was in any respect different from what in fact it was. It is true, the provisions upon which plaintiff relies and to which the defendant takes exception were in fine print, but nevertheless, they were easily legible by any man of ordinary education and eyesight. Neither indifference nor carelessness is sufficient to absolve the defendant from the obligations of the instrument which was thus voluntarily signed by him, and he offers no other reason for not having read the same. Rokusek v. National U.F. Ins. Co.50 N.D. 123, 195 N.W. 300; Embden State Bank v. Shea, 50 N.D. 455, 196 N.W. 310.
Neither do we think that there is any merit to the contention that the contract as contained in the order is void and unenforcable because unfair, unreasonable, and contrary to public policy. There is nothing inherently vicious about the terms set forth in the contract. The plaintiff was selling a threshing machine. The defendant was buying one. Certainly a proper and legitimate business transaction. The parties were dealing at arm's length. Both had the right to contract as they saw fit with reference to such subject matter, and having done so neither can, because subsequently he thinks the terms of his contract are unduly harsh, ask relief on that ground alone. Neither can we believe that there is anything in the provisions complained of inherently tending to be injurious to the public, or subversive of the public good or contrary of good morals. We hold then that the contract as thus entered into must control except as the same is contrary to the declared policy of the law in the respects hereinafter pointed out. *Page 568 
Defendant relies upon chapter 238, Sess. Laws 1919 which reads as follows:
"Any person, firm or corporation purchasing any gas or oil burning tractor, gas or steam engine, harvesting or threshing machinery for their own use shall have a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased the purchaser may rescind the sale by giving notice within a reasonable time after delivery to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such personal property or his successor, and placing same at the disposal of the seller.
"Any provision in any written order or contract of sale, or other contract which is contrary to any of the provisions of this act is hereby declared to be against public policy and void."
— and urges that this statute must control in so far as there is any conflict with it on the part of the contract. We think that this must be conceded, and that the contract as entered into must be read as though chapter 238 were incorporated in and made a part of its terms and provisions. But we are of the opinion that any conflict between the writing as signed and the statute does not, under the terms of the statute itself, invalidate the whole contract. It invalidates only such provisions as are contrary to the terms thereof. This is the exact reading of the act. The statute, therefore, avoids only that provision in the contract requiring that notice be given to plaintiff company at its home office not more than seven days after discovery of failure of the machinery to comply with the warranties, and the further provision that upon notice of failure of warranty the company shall have the option either to rescind the contract and return the consideration, or to replace the defective machinery. Thus reading the statute into the contract, if the machinery bought did not prove to be reasonably fit for the purpose for which it was purchased, the defendant might rescind by giving notice within reasonable time after the discovery of the unfitness thereof to the plaintiff itself or to the agent who negotiated the sale and placing the property at the disposal of the seller.
The defendant further contends that the machinery purchased by him was purchased for a particular purpose known to the plaintiff, and therefore under the provisions of subdivision 1, § 15 of the Sales Act *Page 569 
(Sess. Laws 1917, chap. 202), there was an implied warranty that the machinery should be reasonably fit for that purpose; that this implied warranty was outside of and beyond the contract entered into by and between the parties; that therefore the limitations of the contract as to notice and as to remedies in case of breach were inapplicable in case of a breach of such implied warranty; that here the evidence incontrovertibly establishes such a breach, and so it follows that in considering such breach, the damages flowing from it and to be recovered therefor, and the notice with respect thereto to be given, no regard need be paid to the terms of the written contract. Defendant cites as sustaining this contention: Minneapolis Steel Machinery Co. v. Casey Land Agency, 51 N.D. 832, 201 N.W. 172; International Harvester Co. v. Thomas, 43 N.D. 199, 176 N.W. 523; Advance-Rumley Thresher Co. v. Geyer, 40 N.D. 18, 168 N.W. 731; Kopan v. Minneapolis Threshing Mach. Company, 39 N.D. 27, 166 N.W. 826; Comtograph Co. v. Citizens Bank, 32 N.D. 59, 155 N.W. 680. We think, however, that these authorities do not sustain the position thus taken by the defendant. The contract, in the instant case, expressly excludes and negatives all statutory or implied warranties excepting as to title, and further expressly provides that in no event shall the company (the plaintiff) be subject to any other or further liability, except such as may be expressly given and provided for in the contract itself, and only on the conditions stipulated in the contract. The cases cited are all cases in which the warranties in question were not negatived and excluded, and hold that since under the circumstances variously disclosed such implied warranties were not negatived, they were available, and any restrictions imposed in the contracts, either as to the requirement regarding notice or as to the remedies applicable, or otherwise, apply only to the express warranties of the contract. In the instant case, however, as we have indicated, all statutory or implied warranties, except as to title, are negatived and excluded by the terms of the contract itself. But, insists the defendant, in this respect the contract is in contravention of the Sales Act, chapter 202, Sess. Laws 1917, and to that extent it must be held to be inoperative. With this contention we cannot agree. The Uniform Sales Act is not intended to be a restriction upon the rights of parties to contract. It is simply a statement of the rules applicable in the construction of such contracts as *Page 570 
may be made. It does not contract for the parties; it measures their rights under the contracts they themselves make. It does not purport to create a mold in which all such contracts must be cast. There is nothing contained within its provisions which can be said to prohibit the inclusion of any lawful term that the parties may desire in a contract for sale, nor is there anything therein contained which can be said to avoid any lawful term or provision that may be thus mutually agreed upon. See § 71 of the Sales Act; Renne v. Volk, 188 Wis. 508, 205 N.W. 385; Hunt v. W.F. Hurd Co., 205 Mich. 142, 171 N.W. 373; Cadillac Mach. Co. v. Mitchell-Diggins Iron Co., 205 Mich. 107, 171 N.W. 479. See also Minneapolis Steel Machinery Co. v. Casey Land Agency, supra. We therefore hold that the parties to the contract here in question having by express terms negatived and excluded all implied warranties, the defendant cannot claim the benefit of any such as might have been available had the contract not done so.
As we have heretofore said, the contract, which determines the rights and liabilities of the respective parties with reference to the transaction here in question, must be read as though chapter 238, Sess. Laws 1917 were incorporated in and made a part of its terms and provisions, and in case of any conflict between the written contract as signed and the provisions of chapter 238, the latter must prevail. Considering then the contract as thus defined, what was the effect of chapter 238? It seems clear that the only remedy given to the defendant thereby was the right of rescission on notice as provided by the act. Such notice was required to be given, either to plaintiff or to the agent who made the sale or made the delivery of such property to the defendant, within a reasonable time after discovery of unfitness for the purpose for which the machinery was purchased. Were these requirements complied with? Was there a rescission on the part of the defendant within a reasonable time after discovery of the unfitness of the machine? It appears that the salesman who procured the order from the defendant for the machine, the Ramsey County Implement Company, the local dealer who was credited with the sale, and Wood, the district manager at Grand Forks, were at one time or another each given notice of the alleged failure of the machine to fit the purpose for which it was purchased, and of the intention of the defendant to rescind the contract and return the machine. Such notice to Wood, however, was not given *Page 571 
until after the conclusion of the threshing season of 1922, more than a year after the alleged unfitness became known to the defendant. It is true that defendant complained of this alleged unfitness to Swingseth who made the sale and to various experts of the plaintiff company who at one time or another examined the machine, and to Rapp the manager of the Ramsey County Implement Company, at once upon the discovery of the alleged unfitness of the machine and at various times thereafter. But, notwithstanding such complaints and offers to return the machine he did not place it at the disposal of the plaintiff until more than a year had elapsed after his discovery of its defects. On the contrary he kept and used it, and in December 1921, after the threshing season was concluded and the defendant's threshing had been done, he paid the first note of $300. He stored the machine in his shed until the next threshing season and again tried to operate it. It worked no better than before and defendant again put it aside. Later in the fall of 1922 he told Wood, who came to see him, that he would pull it into town, but Wood refused to receive it back, so defendant stored it until the fall of 1924. After this foreclosure action was begun he put it outside and notified Wood of that fact. It seems to us that under these circumstances the defendant cannot say he rescinded the contract and placed the machine at the disposal of the seller, within a reasonable time after the discovery of the unfitness of the machine to do the work for which it was purchased.
Defendant argues that he was induced to act as he did by reason of the representations of the various agents and employees of the plaintiff company, and that therefore plaintiff is not in a position to say he did not rescind within a reasonable time. He contends that plaintiff waived the right to object on account of delay by reason of these assurances and promises. That in any event, under chapter 238, supra, such agents and employees had authority to act in that behalf. We cannot, however, give to the statute the effect thus contended for by the defendant. This chapter simply provides that if the machinery fails to satisfy the purposes for which it was intended, the purchaser may rescind the contract. It prescribes the manner wherein the rescission shall be made. It does not purport to confer any authority upon any agents of the seller, excepting to receive notice of such default and rescission. If the seller's agents may waive any requirement, it is only *Page 572 
because of authority conferred by their principal and not under the statute. The only evidence in this case touching the authority of the various agents, salesmen, collectors and experts of the plaintiff, is the testimony of Wood. Wood testified that neither he nor any of the others had any authority other than to make sales under the regular form of contract heretofore set out, and collect money on such contracts; that while the plaintiff company had experts who went about from machine to machine, this was done for the convenience and service of the owners of the machines; that it was their duty to report any complaint regarding the machines, but that they had no authority to act for the plaintiff. The defendant made complaint to Rapp, to Swingseth, and to the various experts who examined his machine, but never at any time proffered a return of the machine until he did so to Wood after the threshing season of 1922 was ended. It is true that he had some correspondence relating to certain pulleys on the separator, but nothing was said by defendant therein from which Wood could infer that the machine was unsatisfactory, or that the defendant wanted to rescind. Quite the contrary was the case. After the threshing season of 1921 was closed, defendant paid the $300 note without any word of complaint, other than such as he may have made to Rapp or to Swingseth. The defendant was himself a large stockholder in the Ramsey County Implement Company of which Rapp was the manager. Rapp was called as a witness by the defendant and testified:
Q. Did he (Hocking) ever tell you he would not keep the machine?
A. Yes sir.
Q. When did he tell you that?
A. He told me that in the fall of 1921 and 1922 both.
Q. He told you to take it back?
A. Yes.
Q. When he told you to take it back in the fall of 1921, what did you tell him then?
A. I persuaded him not to insist on that because I was selling the machines and if one of the stockholders could not keep it it would raise the devil with our business.
Q. Did you make any statement to him at that time whether or not the company would make it right? *Page 573 
A. I told him I was sure that they would.
It is apparent that there was no attempt at rescission on the part of the defendant until after the completion of the threshing season of 1922, more than a year subsequent to the purchase of the machine. It is likewise apparent that this delay in attempting to rescind was not occasioned by considerations which could operate to establish any acquiescence in or waiver of the right to object to such delay.
The judgment appealed from must be reversed and judgment ordered for plaintiff as prayed in the complaint. It is so ordered.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and JOHNSON, JJ., concur.